**BLOCKBUSTER, INC., Appellant,**

v.

**C–SPAN ENTERTAINMENT, INC. and Sunil Dharod, Appellee.**

**No. 05–06–00849–CV.**

Court of Appeals of Texas, Dallas.

Aug. 12, 2008.

Rehearing Overruled Nov. 6, 2008.

**484**

Nina Cortell, Haynes & Boone, L.L.P., Dallas, TX, for Appellant.

David C. Musslewhite, Fruitvale, TX, Paul A. Bezney, Adkerson, Hauder & Bezney, P.C., Julia F. Pendery, Dallas, TX, for Appellee.

Before Justices RICHTER, LANG, and MAZZANT.

## OPINION

Opinion by Justice RICHTER.

This dispute arises out of Sunil Dharod's purchase of 11 Blockbuster stores. At various times during the negotiation and purchase process, Blockbuster provided Dharod with three different profit and loss statements. The parties executed an asset sale contract at the time of closing. After closing, the parties executed a consent to transfer (transfer agreement) transferring Dharod's rights, title, and interest in and to the Blockbuster stores to C–Span. The transfer agreement included a broad form release of claims against Blockbuster. Dharod and C–Span subsequently initiated this suit against Blockbuster and asserted claims for breach of warranties in the asset sale agreement, conversion, and fraudulent inducement. Following a bench trial, the trial court entered judgment for Dharod and C–Span in excess of $8.5 million dollars. Blockbuster challenges the trial court's findings in support of the judgment and argues C–Span and Dharod are not entitled to recover for fraudulent inducement or breach of contract and are not entitled to damages or attorney's fees. Blockbuster also asserts it is entitled to recover its attorney's fees. We conclude Dharod and C–Span are not entitled to judgment on any of their claims or to attorney's fees because the claims against Blockbuster were released upon execution of the consent to transfer. Because the asset sale agreement provides for an award of attorney's fees to the prevailing party and Blockbuster is the prevailing party, Blockbuster is entitled to recover its attorney's fees. We reverse the trial court's judgment and render judgment for Blockbuster on attorney's fees.

### BACKGROUND

In 1998, Dharod, an experienced franchisee, attended a two-day event hosted by Blockbuster for potential franchisees. Blockbuster provided some initial evaluation material, and Dharod signed a confidentiality agreement that permitted him to receive Blockbuster proprietary informa-

tion. The confidentiality agreement provided that only representations and warranties contained in a definitive sales transaction agreement would have any legal effect, and that no contract would be deemed to exist unless and until a definitive transaction agreement was executed. The confidentiality agreement further provided that profit and loss statements (P & L's) provided by Blockbuster "may not accurately reflect" the experience of franchisees, who may be subject to a different revenue-sharing model than corporate stores.

Dharod indicated he was interested in purchasing a Blockbuster franchise, and retained Akin, Gump, Strauss, Hauer and Feld, LLP (Akin Gump) to represent him in connection with the purchase. After Dharod was approved as a franchisee, he expressed an interest in purchasing 11 stores located in Tyler, Texas. In June 1999, Blockbuster gave him a bid package that contained a P & L (the Bid P & L). The Bid P & L was not audited, and provided data on company-owned stores. In this regard, the Bid P & L warned that results were "likely to differ" from franchisee results for the same stores. Dharod initially declined the purchase because he believed Blockbuster's price was too high.

Blockbuster and Dharod continued their dialogue about a potential sale. In August 1999, a Blockbuster representative asked Dharod to reconsider the Tyler purchase. The representative printed a P & L from the Blockbuster computer system (the August P & L) and provided it to Dharod. Although the August P & L appeared to be more favorable than the Bid P & L, it showed a negative cost of goods number for the month of July 1999. When Dharod inquired about the negative number, the Blockbuster representative told him it resulted from an accounting adjustment.

At the time the representative retrieved the August P & L for Dharod, Blockbuster was in the process of changing the manner in which it allocated costs for 1999 and had yet to book costs for the month of July. When the costs were booked, the P & L showed a positive cost number for the month of July.

Dharod decided to purchase the Tyler stores. In September 1999, Dharod formed C–Span for the purpose of acquiring the Tyler Blockbuster stores. C–Span is a Subchapter S corporation in which Dharod is the sole shareholder. On September 20, 1999, Akin Gump received additional documents in connection with the closing of the transaction. A new P & L that showed a positive cost number for the month of July 1999 (the Contract P & L) was included in the documents. Akin Gump faxed the Contract P & L to Dharod, but Dharod claimed he did not recall receiving it.

The transaction closed five days later, with Dharod agreeing to pay $5.9 million for the Tyler stores. The asset sale agreement, to which the Contract P & L was attached, was executed in connection with the closing. The franchise agreements for the 11 stores were also executed. Dharod signed the asset sale agreement in his individual capacity and on behalf of C–Span as its president. Dharod signed the franchise agreements in his individual capacity. The asset sale agreement provided for the Tyler stores to be operated under the franchise agreements and for Dharod to transfer the franchises to C–Span. On October 25, 1999, Dharod, C–Span, and Blockbuster executed the transfer agreement. The transfer agreement transferred all of Dharod's interests in the stores under the franchise agreements to C–Span and provided, in pertinent part:

As additional consideration for [Blockbuster's] consent to the Transfers,

[Dharod] hereby releases, relieves and discharges [Blockbuster] ... of and from any and all claims, demands, rights, duties, obligations and any action or causes of action that it has or might have been asserted against [Blockbuster], whether known or unknown, foreseen or unforeseen, direct or indirect, contingent or actual, liquidated or unliquidated, which have arisen or which might or could arise under the Agreements or under federal, state, or local law prior to or after the date of this Consent. IT IS THE EXPRESSED INTENTION OF [DHAROD] THAT THIS RELEASE BE GENERAL AND AS BROAD AS PERMITTED BY LAW FOR SUCH MATTERS EXISTING OR ARISING AT ANY TIME PRIOR TO OR AFTER THE DATE OF THIS CONSENT.

The Tyler stores did not perform as Dharod anticipated. Consequently, Dharod and C–Span initiated this action against Blockbuster and Akin Gump.[1] Dharod and C–Span claimed, *inter alia*, Blockbuster fraudulently induced Dharod to enter into the asset sale agreement when it provided him with the August P & L. Dharod further asserted claims for breach of contract based on the August P & L, the Contract P & L, and certain warranties in the asset sale agreement.[2] Blockbuster answered and asserted several affirmative defenses, including the defense of release. Blockbuster also counterclaimed for breach of contract. Dharod asserted several affirmative defenses in response to Blockbuster's counterclaim, including "lack of or

failure of consideration."[3] After a bench trial, the trial court filed detailed findings of fact and conclusions of law. The court found the value of the Tyler stores Dharod purchased was zero, and that Blockbuster had breached the contract and fraudulently induced Dharod to enter into it. As a result, the court awarded Dharod and C–Span $5.9 million dollars in actual damages, plus interest and attorney's fees. Blockbuster requested additional findings of fact and conclusions of law which were expressly denied by the trial court. The trial court also denied Blockbuster's motion for new trial. This appeal followed.

## STANDARD OF REVIEW

Findings of fact in a nonjury trial have the same force and dignity as a jury's verdict and may be reviewed for legal and factual sufficiency of the evidence. *See Ortiz v. Jones,* 917 S.W.2d 770, 772 (Tex. 1996) (per curiam); *Catalina v. Blasdel,* 881 S.W.2d 295, 297 (Tex.1994). In reviewing for legal sufficiency we view the evidence "in the light favorable to the verdict, crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *City of Keller v. Wilson,* 168 S.W.3d 802, 807 (Tex.2005). In reviewing for factual sufficiency, we are to set aside the finding "if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *See Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986) (per curiam). The trial court's conclusions of law are reviewed de novo. *See Subaru of*

---

1. The claims against Akin Gump were severed prior to trial.

2. The parties disagree on whether the breach is characterized as a breach of warranty or a breach of contract. The distinction is immaterial to our analysis, and we refer to the claims as claims for breach of contract.

3. Dharod does not specify the agreement to which this defense is alleged to apply and the pleading was not verified. Blockbuster, however, did not specially except or object.

*Am., Inc. v. David McDavid Nissan, Inc.,* 84 S.W.3d 212, 222 (Tex.2002).

### DISCUSSION

*Were the Claims Against Blockbuster Within the Scope of the Release?*

The trial court found Dharod was fraudulently induced to enter into the asset sale agreement and that Blockbuster breached the agreement, but made no findings on the issue of release. Blockbuster requested additional findings on the issue of release which the trial court denied. In its first two issues, Blockbuster asserts a number of challenges to the trial court's findings on breach of the asset sale agreement and fraudulent inducement.[4] One of these challenges involves Blockbuster's contention that Dharod and C–Span (together Dharod) are not entitled to recovery because all claims against Blockbuster were released. Dharod argues his claims were not barred because they arose out of the asset sale agreement and the release is limited to claims under the franchise agreements. In response, Blockbuster maintains Dharod's interpretation fails to give full effect to all provisions in the contract. We agree with Blockbuster.

Neither party has claimed the contracts are ambiguous. The interpretation of an unambiguous contract is a question of law. *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.,* 995 S.W.2d 647, 650–51 (Tex.1999). In construing a written contract, we must ascertain and give effect to the intentions of the parties as expressed within the four corners of the document. *See Frost Nat'l Bank v. L & F Distributors, Ltd.,* 165 S.W.3d 310, 311–12 (Tex.2005). We consider the entire writing and attempt to harmonize and give effect to all the provisions of the contract by analyzing the provisions with reference to the entire agreement. *Hackberry Creek Country Club, Inc. v. Hackberry Creek Home Owners Ass'n,* 205 S.W.3d 46, 55 (Tex.App.–Dallas 2006, pet. denied). A court must favor an interpretation that affords some consequence to each part of the agreement so that none of the provisions will be rendered meaningless. *Coker v. Coker,* 650 S.W.2d 391, 394 (Tex.1983).

■ The release set forth in the consent to transfer states it is to be construed "as broadly as permitted by law" and releases claims "under the Agreements or under federal, state or local law." Dharod's argument is premised on the fact that the release defines "agreements" as the franchise agreements. But Dharod ignores the remainder of the phrase "or under federal, state or local law." By using the disjunctive term "or", the release covers two alternatives: (1) claims that arise under the franchise agreements or (2) claims that arise under federal, state or local law. *See City of Lubbock v. Adams,* 149 S.W.3d 820, 827 (Tex.App.–Amarillo 2007, pet. denied) ("or" expresses alternative). Dharod's claims for breach of the asset sale agreement and fraudulent inducement arise under state law. Therefore, we conclude the claims fall within the scope of the release.

*Does the Release Lack Consideration?*

We next consider whether the release fails for lack of consideration. Although Dharod premised his claims for damages on the contracts executed in connection with the purchase, he argues the release in the transfer agreement lacks consider-

---

4. The challenged findings include findings of fact 4–10, 12–16, 26–34, 37–39, and 41, and conclusions of law 9–20.

ation.[5] Specifically, Dharod contends Blockbuster consented to the transfer in article 12.18 of the asset sale agreement and then gave the same consent in the transfer agreement. Dharod maintains the consent language of the release expresses a promise to fulfill a pre-existing obligation and is therefore not consideration.

■ Consideration is a bargained-for exchange of promises. *See Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 409 (Tex. 1997). Both the transfer agreement and the asset sale agreement contain a recitation of consideration. A written contract reciting a consideration is deemed to import one. *See Lemaire v. Davis*, 79 S.W.3d 592, 597 (Tex.App.–Amarillo 2002, pet. denied); *Williams v. Hill*, 396 S.W.2d 911, 912 (Tex.Civ.App.–Dallas 1965, no writ). Indeed, the existence of a written contract presumes consideration for its execution. *See Simpson v. MBank Dallas, N.A.*, 724 S.W.2d 102, 107 (Tex.App.–Dallas 1987, writ ref'd n.r.e.). If a party alleges lack of consideration, he has the burden to rebut the presumption. *See* Tex.R. Civ. P. 94; *Doncaster v. Hernaiz*, 161 S.W.3d 594, 603–04 (Tex.App.–San Antonio 2005, no pet.); *Buddy L., Inc. v. General Trailer Co., Inc.*, 672 S.W.2d 541, 547 (Tex.App.–Dallas 1984, writ ref'd n.r.e.). Because Dharod pled "no consideration" as a basis to avoid the release language in the consent to transfer, it was Dharod's burden to prove it.

■ The transfer agreement containing the general release was introduced into evidence without objection. Dharod did not offer testimony on consideration, nor did he seek any findings from the court on the issue.[6] The only testimony concerning the release was Dharod's testimony that he signed the transfer agreement in his individual capacity and as president of C–Span. Therefore, Dharod failed to rebut the presumption of consideration.

Dharod's argument also ignores the conditional nature of the promise in the asset sale agreement. Article 12.18 of the asset sale agreement provides for the execution and transfer of the franchise documents and states:

> ... the parties ... agree that prior to or concurrently with the Transfers the parties shall execute and deliver all such further documents, instruments and assurances, and take such further action as may be required to give effect to the Transfers in accordance with the Franchise Documents ... [Dharod and C–Span] shall execute and deliver ... all documents required by the Franchise Documents (the "New Agreements"). **The Seller hereby waives its right of first refusal ... and consents to the Transfers, subject to the execution and delivery of the New Agreements.**

(Emphasis added). Thus, Blockbuster's consent was only to be effective upon execution of the franchise agreements and any additional documents that may have been required. The asset sale agreement clearly contemplated the execution of the franchise agreements. The franchise agreements required the execution of a broad, general release. When Dharod executed

---

**5.** Dharod attacks the release language in the transfer agreement, but does not claim the release language is severable from the rest of the contract. Dharod fails to reconcile or explain the effect on his recovery if the transfer agreement were to fail for lack of consideration.

**6.** Because Dharod did not request and the trial court did not make a finding on consideration, we do not presume this defense supports the judgment. *See F.R. Hernandez Constr. & Sup. Co., Inc. v. Nat'l Bank of Commerce*, 578 S.W.2d 675, 678–79 (Tex. 1979).

the transfer agreement and released his claims, he satisfied the conditions attached to Blockbuster's consent. The promise became effective upon satisfaction of the conditions. Therefore, Blockbuster's conditional consent in the asset sale agreement does not constitute past consideration.

■ After the sale, when the relationship between the parties became contentious, Blockbuster sought an additional release from Dharod. Dharod argues this behavior establishes Blockbuster did not believe it had been generally released. We decline to consider the inferences Dharod advances because they are immaterial. The release is unambiguous. Therefore, parol evidence is not relevant to its interpretation. *See Sun Oil Co. v. Madeley,* 626 S.W.2d 726, 732 (Tex.1981).

■ A valid release is a complete bar to any action based on matters covered by the release. *See Deer Creek Ltd. v. N. Am. Mortg. Co.,* 792 S.W.2d 198, 201 (Tex. App.–Dallas 1990, no writ). Because the release covered Dharod's claims and does not fail for lack of consideration, Dharod's claims are barred. Blockbuster's first and second issues are sustained. Our resolution of these issues obviates the need to address Blockbuster's remaining challenges to the court's findings on fraudulent inducement and breach of contract.

### Dharod's Attorney's Fees

The trial court awarded Dharod his costs and attorney's fees based on his recovery on the contract claims. In its third issue, Blockbuster maintains Dharod is not entitled to attorney's fees because he was not entitled to prevail on his contract claims.[7] We have concluded Dharod was not entitled to recovery on his contract claims. It follows that Dharod was not

entitled to recover his costs and attorney's fees. Blockbuster's third issue is sustained.

### Blockbuster's Attorney's Fees

■ In its fifth issue, Blockbuster asserts it is entitled to attorney's fees and costs as the prevailing party on the contract claims. The asset sale agreement provides in pertinent part:

In the event of a dispute between the parties in connection with this Agreement and the transactions contemplated hereby, each of the parties hereto hereby agrees that the prevailing party shall be entitled to reimbursement by the other party of reasonable legal fees and expenses incurred in connection with any action or proceeding.

■ Thus, the contract clearly provides for an award of reasonable costs and attorney's fees to the prevailing party in a dispute. A party seeking to recover attorney's fees carries the burden of proof to establish the amount which is reasonable and necessary. *Wagner v. Edlund,* 229 S.W.3d 870, 875 (Tex.App.–Dallas 2007, pet. denied). Blockbuster's billing statements for the years 2001–2005 were admitted into evidence without objection. The redacted statements showed the tasks performed, the date on which each task was performed, the hourly rate and identity of the timekeeper performing the task, the amount of time spent on each task, and the cost for the services performed. A summary of these voluminous records, showing the monthly total of the fees and expenses incurred during this time period was also admitted into evidence without objection. The summary establishes Blockbuster incurred $2,108,579.50 in fees and $243,229.30 in expenses during the five-year period this case was litigated. Lead

---

7. Blockbuster also argues Dharod was not entitled to recover attorney's fees on his con-

version claim, but there is no indication that fees were awarded on this basis.

counsel for Blockbuster testified concerning many of the factors identified in Rule 1.04 of the Texas Rules of Professional Conduct[8] as applied to this case, and concluded that the fees and expenses Blockbuster incurred were reasonable and necessary based on his experience with cases of this nature. Counsel for Blockbuster further testified that an additional $150,000–200,000 would be incurred through the end of trial. Therefore, utilizing the lower end of the estimated additional fees, the evidence reflects Blockbuster incurred reasonable and necessary fees and expenses in the amount of $2,501,808.80.

Turning to the next part of the analysis, we examine whether Dharod established a contrary proposition. Dharod points to the fact that Blockbuster incurred five times more attorney's fees than he did, and argues the magnitude of the fees establishes the fees are unreasonable as a matter of law. The issue, however, is not whether the fees are proportionate to Dharod's. We do not examine the magnitude of fees in a vacuum. The focus of our inquiry is whether Dharod controverted the evidence that the fees were reasonable or necessary.

■■■ When the testimony of an interested witness is not contradicted by any other witness and is clear, positive, direct, and free from contradiction, it is taken as true as a matter of law. *See Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 882 (Tex.1990). This is especially true where, as here, the opposing party had the means and opportunity to disprove the testimony but failed to do so. *Id.* Although Dharod's counsel cross-examined Blockbuster's attorney, he did not challenge the amount of the fees charged, the nature of the services provided, or whether the amount charged accurately reflected the nature and complexity of the case. Although there was an exchange between counsel about an increased amount of fees resulting from discovery disputes, the amount of the increase was never quantified, nor were the increased fees conclusively attributed to Blockbuster. Moreover, the evidence does not establish that any such fees were not reasonable or necessary. The estimated additional fees to be incurred through the end of trial were similarly unchallenged. Because Blockbuster presented competent, uncontroverted evidence of its right to attorney's fees and this evidence was not contradicted, Blockbuster is entitled to recover its costs and attorney's fees.

■■■ Dharod also argues Blockbuster fails to challenge the court's findings of fact and conclusions of law concerning breach of contract and fraudulent inducement specifically in connection with its argument that it is entitled to recover attorney's fees. Dharod further contends the Civil Practice and Remedies Code does not permit recovery of attorney's fees by a party who defends against a contract claim. Attorney's fees, however, may be based on the statute or a contract. *See Dallas Cent. Appraisal Dist. v. Seven Inv.*

---

8. In *Arthur Andersen & Co. v. Perry Equipment Corp.*, 945 S.W.2d 812, 818 (Tex.1997), the Texas Supreme Court outlined factors to guide the determination of whether fees are reasonable and necessary. The factors include: the time, labor, and skill required to properly perform the legal service; the novelty and difficulty of the questions involved; the customary fees charged in the local legal community for similar services; the amount involved and the results obtained; the nature and length of the professional relationship with the client; and the experience, reputation, and ability of the lawyer performing the service. *Id.* (citing TEX. DISCIPLINARY R. PROF'L CONDUCT 1.04(b), reprinted in TEX. GOV'T CODE ANN. tit. 2, subtit. G, app. A (Vernon 2005) (TEX. STATE BAR R. art. X, § 9)).

*Co.,* 835 S.W.2d 75, 77 (Tex.1992). Dharod's argument is misplaced because it ignores the language of the contract which provides for an award of attorney's fees to the prevailing party. The term "prevailing party", as used in this context, means the party who successfully prosecutes the action or defends against it on the main issue. *See Weng Enterprises, Inc. v. Embassy World Travel, Inc.,* 837 S.W.2d 217, 223 (Tex.App.–Houston [1st Dist.] 1992, no writ). Blockbuster is the prevailing party, and as such is entitled to recover its costs and attorney's fees under the contract.

We sustain Blockbuster's fifth issue, and award Blockbuster its costs and attorney's fees of $2,501,808.80. *See* TEX.R.APP. P. 43.3(a); *Welch v. Hrabar,* 110 S.W.3d 601, 610 (Tex.App.–Houston [14th Dist.] 2003, pet. denied) (appellate court may render judgment for uncontroverted attorney's fees in the interest of justice).

We reverse the trial court's judgment awarding damages, costs and attorney's fees to Dharod and render judgment that Blockbuster take $2,501,808.80 in costs and attorney's fees.