

NUMBER 13-10-00393-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

ESSAM A. ELSHAFIE,                                                Appellant,

v.

MARWA ELSHAFIE,                                                Appellee.

On appeal from the 444th District Court of
of Cameron County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Garza and Benavides
Memorandum Opinion by Justice Garza**

This case involves a divorce and custody dispute between appellant, Essam A. Elshafie (Essam), and appellee, Marwa Elshafie (Marwa). By three issues, Essam contends the trial court abused its discretion by: (1) limiting his rights as a possessory conservator; (2) imposing abduction prevention measures; and (3) awarding Marwa

attorney's fees. We conclude that Marwa presented no evidence regarding the reasonableness or necessity of her attorney's fees, and that the trial court therefore abused its discretion in awarding her attorney's fees. We reverse that portion of the judgment and render judgment that Marwa take nothing on her claim for attorney's fees. The remainder of the judgment is affirmed.

## I. BACKGROUND

Essam and Marwa are both of Egyptian descent. Soon after an arranged introduction, they became engaged and were married in Egypt in January 2001. Following the marriage, they moved to Kent, Ohio, where Essam began pursuing a Ph.D. degree in accounting. The couple's first child, A.E., a daughter, was born in January 2004.

In July 2005, Marwa, pregnant with a second child, and A.E. traveled to Egypt to visit family. Marwa's mother had recently died. During Marwa and A.E.'s absence, Essam finished the coursework for his degree, accepted a teaching position at the University of Texas at Brownsville, and moved to Brownsville. When Marwa and A.E. returned in October 2005, they joined Essam in Brownsville. H.E., a boy, was born in January 2006.

In December 2006, Essam returned to Egypt for approximately three weeks to visit his dying father. When he returned to the United States in January 2007, the couple separated and both parties petitioned for divorce. In March 2007, the trial court issued temporary orders appointing Essam and Marwa as joint managing conservators.

In June 2007, Essam accepted a teaching position at Northeastern Illinois University in Chicago. Marwa and the children briefly moved to Chicago and the couple

2

attempted to reconcile. After approximately six weeks, Marwa, pregnant with a third child, and the children moved back to Brownsville. In March 2008, Y.E., a son, was born.

Numerous disputes regarding visitation and related issues followed. Between their initial separation and the time of trial in December 2009—a period of three years— both parties filed numerous motions and the trial court modified the temporary orders several times. In early December 2009, a jury trial was held solely on the issue of conservatorship. The jury found that Marwa should be named as sole managing conservator.

On March 3, 2010, the trial court held a hearing to consider several pending motions for contempt, Essam's rights as a possessory conservator, and the division of property. The trial court appointed Marwa as sole managing conservator and appointed Essam as possessory conservator. The trial court granted Marwa the right to directly obtain information regarding the children's education and medical records, but denied Essam similar access. The trial court also found that Essam posed a risk of international abduction of the children and imposed measures to minimize the risk, including granting Marwa control over the children's passports and enjoining Essam from disrupting or removing the children from school. With regard to visitation, in addition to granting Essam standard visitation rights, the trial court granted Essam visitation for a week during his spring break, even if his break did not coincide with the children's spring break. After addressing child support and dividing the property, the trial court awarded Marwa $13,400.00 in attorney's fees, plus additional fees in the event that Essam filed an unsuccessful motion for new trial and appeals. Essam filed a

motion for new trial, which the trial court denied. This appeal followed.

## II. RESTRICTION OF ESSAM'S RIGHTS AS POSSESSORY CONSERVATOR

By his first issue, Essam contends the trial court abused its discretion by limiting his rights as a possessory conservator without sufficient evidence to support such limitations. Specifically, Essam complains that the trial court: (1) restricted his access to the children's medical, dental, and psychological records and precluded him from consulting with the children's physician, dentist, or psychologist, *see* TEX. FAM. CODE ANN. § 153.073(a)(3), (4) (West 2008); (2) restricted his access to the children's education records and precluded him from consulting with school officials, attending school activities, and being designated as an emergency contact person for the children, *see id.* § 153.073(a)(3), (5)–(7); (3) granted Marwa control over any estates created for the children, *see id.* § 153.073(a)(9); and (4) denied him the right to confer with Marwa in decisions regarding the children's health, education, and welfare, *see id.* § 153.073(a)(2).

The divorce decree granted Essam (1) the right to receive information from Marwa regarding the health, education, and welfare of the children, *see id.* § 153.073(a)(1), and (2) the right to consent to medical, dental, and surgical treatment during an emergency, *see id.* § 153.073(a)(8). The trial court limited Essam's rights by denying him the remainder of the rights granted to a conservator under section 153.073 of the family code, s*ee id.* § 153.073(a)(2)–(7), (9), and found that the limitations were in the children's best interest, *see id.* § 153.072 (West 2008).

### A. Standard of Review and Applicable Law

4

"Because a trial court has broad discretion to decide the best interest of a child in family law matters such as custody, visitation, and possession, we review a decision to modify conservatorship for a clear abuse of that discretion." *In re A.L.E.*, 279 S.W.3d 424, 427 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (citing *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982)). "A trial court abuses its discretion when it acts arbitrarily or unreasonably, or when it clearly fails to correctly analyze or apply the law." *Id.* (citing *In re D.S.*, 76 S.W.3d 512, 516 (Tex. App.—Houston [14th Dist.] 2002, no pet.)). Under this standard, issues relating to the legal and factual sufficiency of the evidence are not independent grounds of error, but only factors used in assessing whether the trial court abused its discretion. *In re R.T.K.*, 324 S.W.3d 896, 899–900 (Tex. App.—Houston [14th Dist.] 2010, pet. denied); *see In re V.N.S.,* No. 13-07-046-CV, 2008 Tex. App. LEXIS 5131, at *5 (Tex. App.—Corpus Christi 2008, no pet.) (mem. op.). In determining whether an abuse of discretion has occurred because the evidence is legally or factually insufficient to support the trial court's decision, we must inquire: (1) did the trial court have sufficient information upon which to exercise its discretion; and (2) did the trial court err in its application of discretion? *In re T.D.C.*, 91 S.W.3d 865, 872 (Tex. App.—Fort Worth 2002, pet. denied). With regard to the first question, the traditional sufficiency review comes into play. *Id.* We then proceed to determine whether the trial court made a reasonable decision based on the elicited evidence. *Id.* The trial court does not abuse its discretion so long as the record contains some evidence of substantive and probative character to support its decision. *In re C.A.M.M.*, 243 S.W.3d 211, 214 (Tex. App.—Houston [14th Dist.] 2007, pet. denied). The fact that a trial court may decide a matter within its discretionary authority in a different manner

from an appellate court in a similar circumstance does not demonstrate an abuse of discretion. *Id.* at 215. In any case involving an issue of conservatorship, the best interest of the child must always be the primary consideration of the trial court. TEX. FAM. CODE ANN. § 153.002 (West 2008).

The trial court has discretion to determine the terms of possession or access by a possessory conservator. *In re Walters*, 39 S.W.3d 280, 284 (Tex. App.—Texarkana 2001, no pet.) (citing *Thompson v. Thompson*, 827 S.W.2d 563, 566 (Tex. App.—Corpus Christi 1992, writ denied)). If the trial court appoints a possessory conservator, it may grant, deny, restrict, or limit the possessory conservator's possession of or access to the child. *Hopkins v. Hopkins*, 853 S.W.2d 134, 137 (Tex. App.—Corpus Christi 1993, no writ). It may also grant, deny, restrict, or limit any rights, privileges, duties, and responsibilities with respect to the child as are necessary to protect the child's best interest. *Id.*

Where, as here, the trial court did not enter findings of fact and conclusions of law, we imply that the trial court made all necessary findings and we will uphold the judgment on any legal theory supported by the evidence. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990); *Guardianship of C.E.M.–K.,* 341 S.W.3d 68, 77 (Tex. App.—San Antonio 2011, pet. filed).

## B. Discussion

Essam contends "[t]here is no evidence to support restricting [his] access to the children's medical, dental, and psychological records or precluding him from consulting with the children's physician, dentist, or psychologist." He further argues that because he has a duty to provide noninvasive medical and dental care during his periods of

6

possession, it "makes no sense" to deny him the right to consult with the children's health care providers and deny him access to the children's health care records.[1]

In response, Marwa cites the following evidence—much of which was hotly disputed at trial—as supporting the limitations of Essam's rights:

(1) Marwa testified that one evening in November 2006, she and Essam argued and she refused to have sex with him. Essam beat her and threw her out of the bedroom. The following day, when Essam came home, Marwa locked herself in the bedroom. A.E. and H.E. were in the bedroom also. According to Marwa, Essam began banging on the door and yelling. Marwa testified that when she finally opened the door, Essam came inside and hit her with sufficient force that she hit the window. Marwa called the police; Essam was arrested and spent the night in jail. Marwa later signed a non-prosecution affidavit because Essam was threatening to divorce her and she wanted to appease him.[2]

(2) Charles L. Sweeney Jr. testified that he is the owner and director of the Montessori School in Brownsville, where A.E. was enrolled as a student in 2007. Sweeney testified that around the time that Essam and Marwa separated in January 2007, Essam came by the school to pick up A.E. When Essam learned that A.E. had already left the school, he was "very upset" and aggressive; Sweeney wondered

---

[1] We acknowledge Essam's argument that the trial court's limitations conflict with his parental duties during his periods of possession. However, we defer to the trial court's discretion to fashion a workable plan that minimizes the risk of disruption to the children. *See In re A.L.E.*, 279 S.W.3d 424, 427 (Tex. App.—Houston [14th Dist.] 2009, no pet.). We urge the parties to avoid hyper-technical interpretations of the decree's restrictions and to recognize that the welfare of their children is more important than their animosity toward each other.

[2] A police report submitted by Brownsville police officer Juan Perez was submitted in evidence. The report notes that Essam admitted trying to get into the bedroom because the house "was his house and he would do as he pleased." Essam denied that he pushed Marwa. Samia Fawza, Essam's sister, testified that Marwa told her about the incident. According to Fawza, Marwa said that when she opened the door, she pushed Essam and told him she did not want him in the bedroom. Essam said that Marwa should not be closing doors in his house; he pushed her out of the way and she tripped and fell.

7

"whether [Essam] was going to take a swing" at him.[3]  A letter from Essam to Sweeney dated December 10, 2007 was admitted at trial.  In the letter, Essam threatened Sweeney with "legal action" if Sweeney did not provide Essam with A.E.'s attendance record.  The letter requested a detailed report of A.E.'s attendance, including the time that A.E. arrives at school and leaves each day.  On cross-examination, Sweeney testified that Essam was concerned that A.E. may be missing too much school.

(3)  Marwa testified that in December 2008, while the children were in Essam's possession, H.E. sustained an injury to his shoulder and Essam took him to the hospital.  Essam did not tell Marwa about the injury; Marwa learned about the incident from A.E.  Marwa later learned that H.E. had sustained a hairline fracture.  Essam admitted that he did not tell Marwa about the injury.  He explained that under the temporary orders then in place, he was obligated to report only injuries requiring "serious medical attention" to Marwa; in Essam's opinion, H.E.'s injury was not "serious."

(4)  According to Marwa, Essam complains that he has no right to provide input prior to her making decisions concerning the children's health, education, and welfare.  Essentially, however, Essam simply disapproves of some of Marwa's decisions regarding the children.  For example, Essam testified that he is concerned that although A.E. attended a Montessori school, H.E. and Y.E. are enrolled in a day-care facility rather than private school.

---

[3] Marwa's testimony established that on the day Essam moved out and came to the house—with a police escort—to pick up his belongings, he had picked A.E. up at school.  Essam refused to bring A.E. home and refused to tell Marwa where she was.  The following day, on the advice of counsel, Marwa retrieved A.E. from school.  When Essam came by the school and learned A.E. was not there, he was very upset and aggressive.

(5) Essam admitted that he had: (a) liquidated his retirement account from the University of Texas at Brownsville and used the funds to pay his attorneys; and (b) dropped Marwa from his insurance coverage without notifying her.

(6) Essam testified that the children would be better off with him in Chicago because he planned to enroll them in an Islamic school and had "plans for their education"; in contrast, he said that Marwa had "no plan whatsoever." Essam was very critical of Marwa's parenting skills. He testified that he had "safety concerns" when the children were in her care because she did not supervise them properly. He criticized Marwa, claiming that she does not spend time with the children, teach them anything, feed them healthy food, or provide opportunities for exercise. He also claimed that Marwa beat the children with her slipper.

In addition to the evidence cited by Marwa, we note her testimony that in December 2006, Essam gave her only a few hours notice before he left for a three-week trip to Egypt to visit his dying father. Marwa stated that during Essam's absence, she did not have access to a cell phone and Essam suspended the home telephone service. Marwa did not have access to a vehicle while Essam was gone. Her credit cards were suspended because Essam had not paid the bills; Essam left her with some food and $100 in cash. Essam disputed Marwa's version of events. However, when the testimony of witnesses is conflicting, this Court will not disturb the credibility determinations made by the trial court or jury and we will presume that the factfinder resolved any conflict in favor of the verdict. *See In re Marriage of Swim*, 291 S.W.3d 500, 505 (Tex. App.—Amarillo 2009, no pet.). The trial court could have viewed

9

Marwa's testimony as evidence of a continuing pattern of behavior by Essam to use his economic leverage in the relationship to control and intimidate Marwa.

We conclude that the trial court had sufficient information upon which to exercise its discretion. *See In re T.D.C.*, 91 S.W.3d at 872. We also conclude that the trial court made a reasonable decision based on the elicited evidence. *See id.* Essam's decision not to tell Marwa about H.E.'s hairline fracture raises a question about his judgment on issues related to the children's health care. Essam's only explanation was that he was not required to tell Marwa about injuries that were not "serious," and in his opinion, H.E.'s injury was not "serious." When Marwa took H.E. to a specialist, she was advised to not put any pressure or stress on the injury. Thus, Essam chose to deprive Marwa of information that was relevant to treatment of H.E.'s injury.

We also find that Essam's letter to Sweeney demanding a day-by-day record of when A.E. arrived at and left school is evidence supporting the trial court's restrictions. At the hearing on Essam's possessory conservator rights, Marwa's counsel argued that Essam's "constant attempts at trying to interrupt what is going on with the children" would continue unless the trial court limited his rights as a possessory conservator. We conclude that the record contains some evidence of substantive and probative character to support the trial court's decision, and therefore, the trial court did not abuse its discretion in limiting Essam's possessory conservator rights. *See In re C.A.M.M.*, 243 S.W.3d at 214. We overrule Essam's first issue.

### III. ABDUCTION PREVENTION MEASURES

By his second issue, Essam contends that the trial court abused its discretion in imposing abduction prevention measures. *See* TEX. FAM. CODE ANN. §§ 153.501 (West

10

2008), 153.502 (West Supp. 2010). Specifically, the trial court (1) prohibited Essam from applying for passports for the children, (2) prohibited him from taking the children out of the United States, and (3) permanently enjoined him from removing the children from school.

## A.     Standard of Review and Applicable Law

The Waco Court of Appeals has set forth the appropriate standard of review:

> We review a court's decision to impose "abduction prevention measures," which are based on a finding that there is a potential risk of international abduction, under an abuse-of-discretion standard. We do not conduct an independent review of findings of fact in such a case under traditional legal and factual sufficiency standards. Rather, legal and factual sufficiency are factors which can be considered in determining whether an abuse of discretion has occurred.

> We view the evidence in the light most favorable to [the trial court's] decision. An abuse of discretion does not occur when the decision is based on conflicting evidence. Conversely, an abuse of discretion does occur when a court acts "without reference to any guiding rules and principles" or in an arbitrary and unreasonable manner.

*In re Sigmar*, 270 S.W.3d 289, 297–98 (Tex. App.—Waco 2008, orig. proceeding) (internal citations omitted).

Section 153.501(a) of the family code authorizes a trial court to render orders for the protection of a child "if credible evidence is presented to the court indicating a potential risk of the international abduction of the child by a parent of the child." TEX. FAM. CODE ANN. § 153.501(a) (West 2008). In determining whether there is a risk of international abduction of a child by the child's parent, the court must consider evidence of, among other things, that the parent "has taken, enticed away, kept, withheld, or concealed a child in violation of another person's right of possession of or access to the child, unless the parent presents evidence that the parent believed in good faith that the

11

parent's conduct was necessary to avoid imminent harm to the child[.]"  *Id.* §

153.502(a)(1) (West Supp. 2010).  Evidence sufficient to support an affirmative finding

on only one of the six preliminary factors listed in subsection 153.502(a)[4] may constitute

"credible evidence of a risk of abduction" sufficient for a court to consider the additional

factors listed in subsections (b) and (c).  *In re Sigmar*, 270 S.W.3d at 300.  Under

subsection (b), if the court finds credible evidence of a risk of abduction based on the

preliminary factors in subsection 153.502(a), it must also consider whether the parent

has strong ties to a country that is not a signatory to the Hague Convention on the Civil

Aspects of International Child Abduction and whether the parent lacks strong ties to the

United States.  TEX. FAM. CODE ANN. § 153.502(b).  Pursuant to subsection 153.502(c),

the court may also consider various other factors, including whether the foreign country

to which the parent has ties is a party to the Hague Convention on the Civil Aspects of

International Child Abduction.[5]  *Id.* § 153.502(c)(4)(H).  If the court finds it necessary

under section 153.501 to protect a child from international abduction by the parent, it

may, among other things, (1) enjoin the parent from removing the child from school, (2)

prohibit the parent from removing the child from the United States, (3) require the parent

to surrender any passport for the child, and (4) prohibit the parent from applying on

behalf of the child for a new passport.  *Id.* § 153.503(3), (4) (West 2008).

## B.    Discussion

---

[4] Subsection (a) of section 153.502 provides a list of six preliminary factors the court "shall consider," including whether the parent:  (1) "has taken, enticed away, kept, withheld, or concealed" the child; (2) has threatened to do so; (3) "lacks financial reason to stay in the United States"; (4) "has recently engaged in planning activities that could facilitate the removal of the child from the United States"; (5) "has a history of domestic violence"; or (6) "has a criminal history or a history of violating court orders."  TEX. FAM. CODE ANN. § 153.502(a) (West Supp. 2010).

[5] It is undisputed that Egypt is not a signatory to the Hague Convention on the Civil Aspects of International Abduction.

Here, the trial court found, under the preliminary factors in subsection 153.502(a), evidence that Essam "has taken, enticed away, kept, withheld, or concealed a child in violation of another person's right of possession of or access to the child." *Id.* § 153.502(a)(1). Viewing the evidence in the light most favorable to the trial court's decision, *see In re Sigmar*, 270 S.W.3d at 298, we must determine whether the trial court abused its discretion in finding credible evidence of a risk of abduction and in imposing abduction prevention measures. *See id.* at 297.

Essam argues that there is no evidence that he violated Marwa's right of possession or of access to the children. Marwa points to evidence that on two occasions—first in December 2008 and a second time in December 2009—Essam agreed to return the children on a particular day but decided to keep the children for a longer period.

### 1. December 2008

In December 2008, Essam emailed Marwa that he would pick up the children for winter break on December 19 and return them on December 26. Essam testified that although he agreed to return the children on December 26, 2008, he changed his mind and texted Marwa that he had decided to keep the children for a longer period; he did not tell Marwa a specific date that he would return the children. The temporary orders applicable in December 2008 were issued on March 18, 2008 and provided, in pertinent part, that Essam's winter break period of possession began at 6:00 p.m. on the day his winter break began and ended at 6:00 p.m. the day before winter break ended at Essam's university. The record does not reflect when Essam's winter break ended in December 2008. Thus, the evidence establishes that although Essam kept the children

13

longer than agreed to in December 2008, it does not establish that by doing so, he violated Marwa's right of possession or access to the children. *See* TEX. FAM. CODE ANN. § 153.502(a)(1).

**2. December 2009**

On December 18, 2009, counsel for Essam and Marwa executed a Rule 11 agreement stating that Essam would pick the children up on December 20, 2009 and return them on December 28, 2009. *See* TEX. R. CIV. P. 11. Without Marwa's consent, Essam kept the children until January 3, 2010.[6]

In his brief, Essam argues that the December 2009 Rule 11 agreement was never filed and therefore "did not have the force of a court order granting Marwa possession as of December 28, 2009." We disagree.

To qualify as a Rule 11 agreement, the agreement must be (1) in writing, (2) signed, and (3) filed with the papers as part of the record. TEX. R. CIV. P. 11; *Padilla v. LaFrance*, 907 S.W.2d 454, 459-60 (Tex. 1995); *In re Guthrie*, 45 S.W.3d 719, 728 (Tex. App.—Dallas 2001, pet. denied) (enforcing Rule 11 agreement even though it was not filed until trial, because it was filed before the trial court rendered judgment and may be enforced as to "any suit pending"). Rule 11 does not prescribe when the written agreement must be filed. *Padilla*, 907 S.W.2d at 461. The purpose of the filing requirement is to put the agreement before the trial court so that the trial court may judge its import and act upon it. *See id.* If an agreement is filed before the trial court

---

[6] At the March 3, 2010 hearing, Marwa's counsel told the court that Essam had kept the children longer than agreed to in December 2008 and more recently, had violated the parties' Rule 11 agreement by keeping the children until January 3, 2010, rather than returning them on December 28, 2009, as provided in the agreement.

14

renders its judgment and before the judgment becomes final, the agreement will comply with Rule 11. *In re Guthrie,* 45 S.W.3d at 728.

Here, the agreement was in writing and was signed by counsel for the parties, but was not filed until January 12, 2010, when it was attached as an exhibit to Marwa's Motion for Contempt and Sanctions. Thus, because the agreement was filed before the trial court rendered its judgment and before the judgment became final, the agreement complied with Rule 11. *See id.* Marwa did not request that the Rule 11 agreement be enforced, but that it be considered by the court at the March 3, 2010 hearing when deciding restrictions on Essam's possessory conservator rights, including whether to impose abduction prevention measures. We conclude that (1) Essam violated the December 2009 agreement by failing to return the children until January 3, 2010 and (2) by doing so, violated Marwa's right of possession or access to the children. *See* TEX. FAM. CODE ANN. § 153.502(a)(1). Viewing the evidence in the light most favorable to the trial court's decision, *see In re Sigmar*, 270 S.W.3d at 298, we conclude that the trial court did not abuse its discretion in finding credible evidence of a risk of abduction under the factors in subsection 153.502(a). *See* TEX. FAM. CODE ANN. § 153.502(a).

Because the trial court found credible evidence of a risk of abduction under the factors in subsection 153.502(a), it was required to consider:

(1) whether the parent has strong familial, emotional, or cultural ties to another country, particularly a country that is not a signatory to or compliant with the Hague Convention on the Civil Aspects of International Child Abduction; and

(2) whether the parent lacks strong ties to the United States, regardless of whether the parent is a citizen or permanent resident of the United States.

15

*See id.* § 153.502(b). With regard to these factors, we consider evidence that the respondent was raised in another country, has family support there, and has the ability to speak that foreign language. *See In re Sigmar*, 270 S.W.3d at 301.

Essam was born, raised, and educated in Egypt and is a practicing Muslim. Essam received an undergraduate degree in accounting in Egypt and worked for a large Egyptian bank for approximately ten years. Upon obtaining a permanent resident visa, he came to the United States under the sponsorship of his sister, who has lived in the United States since the 1970s and is a U.S. citizen. Essam's mother, sister, and three of his brothers live in the United States; one brother, educated in the United States, is working in Egypt as an aeronautical engineer. Essam obtained his masters and Ph.D. degrees in accounting in the U.S. and holds a tenure-track position as an accounting professor at Northeastern Illinois University in Chicago. Since coming to the United States, Essam has traveled to Egypt once, to visit his dying father. If granted custody of the children, Essam planned to enroll them in an Islamic school in Chicago to allow them to "learn their own culture and own language."

Viewed in the light most favorable to the trial court's decision, we find that the trial court could have determined that Essam has strong familial, emotional, or cultural ties to Egypt. *See id.* (holding evidence that parent had cousins in foreign country, spoke several foreign languages, and traveled frequently to foreign country supported finding that parent had strong familial, emotional or cultural ties to another country). As to subsection 153.502(b)(2), Essam's mother and most of his siblings live in the United States and Essam has a tenure-track position as a university professor. This evidence does not support a conclusion that Essam lacked strong ties to the United States.

16

Because the trial court found credible evidence of a risk of abduction under one of the subsection (a) factors, it was also permitted to consider evidence relevant to the factors listed in subsection (c), including:

(4) whether the foreign country to which the parent has ties:

. . . .

(H) is a party to and compliant with the Hague Convention on the Civil Aspects of International Child Abduction according to the most recent report on compliance issued by the United States Department of State;

TEX. FAM. CODE ANN. § 153.502(c)(4)(H). Thus, if the trial court concluded that Essam has "ties" to Egypt—not necessarily strong ties—it could have considered that Egypt is not a signatory to the Hague Convention on the Civil Aspects of International Child Abduction. *See id.*; *see In re Sigmar*, 270 S.W.3d at 302 (holding "facts regarding another country's compliance with the Hague Convention on the Civil Aspects of International Child Abduction, or whether that country poses obstacles to the prompt return of a child taken there or poses risks to the child's safety, are legislative facts about which a trial or appellate court may take judicial notice without prompting by the parties").

Essam also argues that the trial court abused its discretion by failing to consider the least restrictive means available to prevent the risk of abduction. We disagree. Section 153.503 "vests a trial court with broad discretion in determining which preventive measures to impose." *In re Sigmar*, 270 S.W.3d at 307; *see* TEX. FAM. CODE ANN. § 153.503 (West 2008) ("the court may take any of the following actions . . . ").

Viewed in the light most favorable to the decision, the evidence supports the trial court's finding that there is credible evidence of a risk of abduction. *See* TEX. FAM.

17

CODE ANN. § 153.502(a). Based on its dealings with the parties, the trial court was in the best position to resolve conflicts in the evidence and impose appropriate restrictions. *See In re Sigmar*, 270 S.W.3d at 297–98. Accordingly, we conclude that the trial court did not abuse its discretion by imposing abduction prevention measures. *See* TEX. FAM. CODE ANN. § 153.503. We overrule Essam's second issue.

## IV. ATTORNEY'S FEES

By his third issue, Essam contends the trial court abused its discretion in awarding Marwa attorney's fees because Marwa: (1) waived her claim for attorney's fees by failing to submit a jury question on the reasonableness of the fees; and (2) failed to present any evidence supporting the reasonableness of the fees.

### A. Standard of Review

We review the trial court's award of attorney's fees under an abuse of discretion standard. *In re H.S.N.*, 69 S.W.3d 829, 835 (Tex. App.—Corpus Christi 2002, no pet.). Trial courts have broad discretion to award attorney's fees and expenses in suits affecting the parent-child relationship. *See* TEX. FAM. CODE ANN. § 106.002 (West 2008); *Lenz v. Lenz*, 79 S.W.3d 10, 21 (Tex. 2002); *London v. London*, 192 S.W.3d 6, 19 (Tex. App.—Houston [14th Dist.] 2005, pet. denied). Generally, the test for an abuse of discretion is whether the trial court acted arbitrarily or unreasonably, or whether it acted without reference to any guiding rules or principles. *See Swaab v. Swaab*, 282 S.W.3d 519, 524 (Tex. App.—Houston [14th Dist.] 2008, pet. dism'd w.o.j.).

It is well-settled that attorney's fees incurred in establishing the best interests of the child while prosecuting or defending a suit involving the parent-child relationship may be awarded as "necessaries" to the child, even if the fees are incurred by the

unsuccessful party. *See London*, 192 S.W.3d at 19; *London v. London*, 94 S.W.3d 139, 146 (Tex. App.—Houston [14th Dist.] 2002, no pet.); *Roosth v. Roosth*, 889 S.W.2d 445, 455 (Tex. App.—Houston [14th Dist.] 1994, writ denied); *see also In re A.J.L.*, 108 S.W.3d 414, 422 (Tex. App.—Fort Worth 2003, pet. denied). The rationale for this is that both parents are responsible for providing for the child's needs. *See London*, 94 S.W.3d at 146; *Roosth*, 889 S.W.2d at 456. Attorney's fees may be construed as "necessaries" to the child if the attorney's services are related to the needs of the child. *See Roosth*, 889 S.W.2d at 456. There is no abuse of discretion where an award of attorney's fees is supported by the evidence. *London*, 94 S.W.3d at 146. Where the trial court hears evidence that the amount of attorney's fees was reasonable and necessary for the work done by the attorney, it is not an abuse of discretion to award attorney's fees. *In re H.S.N.,* 69 S.W.3d at 835.

## B. Discussion

Because it is dispositive, we begin by addressing Essam's argument that Marwa failed to present any evidence supporting the reasonableness of the fees. We agree.

At the March 3 hearing, the following exchange occurred:

[The Court]: So now we are down to what? Attorney fees?

[Marwa's counsel]: Attorney fees, we had asked for $13,400 as attorney fees and expenses up to date of trial, and then also for attorneys fees in the event of appeal by the respondent, we anticipate, in stairs of $2,000 on a Motion for New Trial, $6,000 on an appeal to the Court of Appeals, and $10,000 for an appeal or writ of error to the Texas Supreme Court.

[The Court]: Okay. And I have already heard the argument on that.[7] All right. I'll go ahead and award the attorney fees.

---

[7] It is unclear what argument the trial court was referring to.

In pertinent part, the Final Decree of Divorce awards Marwa attorney's fees as follows:

> The Court finds that Marwa Elshafie has incurred $13,400.00 as attorney's fees, expenses, and costs, which were necessary as support for Marwa Elshafie and the children the subject of this suit. IT IS ORDERED that good cause exists to award [Marwa's attorneys] a judgment in the amount of $13,400.00 for attorney's fees, expenses, and costs, with interest at 6.0 percent per year compounded annually from the date this Final Decree of Divorce is signed until paid.

The decree further awards Marwa $2,000 in attorney's fees in the event Essam files an unsuccessful motion for new trial, $6,000 in the event of an appeal to the court of appeals, and $10,000 in the event Essam unsuccessfully appeals to the Texas Supreme Court.

There is no abuse of discretion where an award of attorney's fees is supported by the evidence, *see London*, 94 S.W.3d at 146. The trial court's award of attorney's fees as child support does not dispense with the requirement that such fees be supported by evidence. *See id.* A judgment awarding attorney's fees may be supported solely by the attorney's testimony, *see Vasquez v. Vasquez*, 292 S.W.3d 80, 86 (Tex. App.—Houston [14th Dist.] 2007, no pet.). Testimony from a party's attorney about a party's attorney's fees is taken as true as a matter of law if the testimony "is not contradicted by any other witness and is clear, positive, direct, and free from contradiction." *See In re A.B.P.*, 291 S.W.3d 91, 98 (Tex. App.—Dallas 2009, no pet.) (quoting *Blockbuster, Inc. v. C-SPAN Entm't, Inc.*, 276 S.W.3d 482, 490 (Tex. App.— Dallas 2008, pet. granted, judgm't vacated w.r.m.)). This is especially true where the opposing party had the means and opportunity to disprove the testimony, but failed to do so. *Id.*

20

Here, however, Marwa's counsel simply stated the amount of fees requested. She did not state that the fees were reasonable and necessary. *See id.* at 99 (holding evidence sufficient to support award of fees where counsel testified as to hourly rate and fees were reasonable and necessary); *see also In re H.S.N.*, 69 S.W.3d 829, 835 (Tex. App.—Corpus Christi 2002, no pet.) (holding attorney's testimony about experience and necessity and reasonableness of fees was sufficient to support award of attorney's fees). There was no testimony by Marwa or her counsel regarding the hours spent on the case, the hourly rate charged, or the reasonableness or necessity of the fees. Because there is no evidence in the record before us on the issue of attorney's fees, we conclude the trial court abused its discretion in awarding Marwa attorney's fees. *See Vasquez*, 292 S.W.3d at 86 (holding trial court abused its discretion in awarding attorney's fees because party presented no evidence on the issue); *see also Fulmer v. Fulmer*, No. 02-07-322-CV, 2008 Tex. App. LEXIS 5200, at \*\*17–18 (Tex. App.—Fort Worth July 10, 2008, no pet.) (per curiam) (mem. op.) (holding, in absence of evidence demonstrating reasonableness and necessity of fees, trial court abused its discretion by awarding husband $6,000 in attorney's fees).

We sustain Essam's sub-issue regarding Marwa's failure to present any evidence supporting the reasonableness of the fees. Because of our disposition of this sub-issue, it is unnecessary to address Essam's argument that Marwa waived her claim for attorney's fees by failing to submit a jury question on the reasonableness of the fees. *See* TEX. R. APP. P. 47.1.

21

## V. CONCLUSION

We reverse that portion of the Final Decree of Divorce awarding Marwa attorney's fees and render judgment that Marwa take nothing on her claim for attorney's fees. We affirm the remainder of the Final Decree of Divorce.

_____
DORI CONTRERAS GARZA
Justice

Delivered and filed the
22nd day of November 2011.