**AFFIRMED and Opinion Filed January 28, 2020**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

**No. 05-18-00968-CV**

## IN THE INTEREST OF H.K.D. AND J.R.D., CHILDREN

**On Appeal from the 330th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DF-17-15411**

# MEMORANDUM OPINION
Before Justices Whitehill, Schenck, and Pederson[1]
Opinion by Justice Whitehill

Father and Mother are divorced and have two children, HK and JD (the children).

Mother filed a petition seeking to modify the parent-child relationship from the prior final divorce decree. Father answered and filed a counter-petition to modify. The court interviewed the children as requested. Following a bench trial, the court entered an order modifying the decree and made findings of fact and conclusions of law.

Father appeals from that modification order, asserting ten issues arguing that:

(i) the trial court erred by allowing Mother's expert witness to testify because the witness was not timely designated;

---

[1] After submission of this case, Justice Brown was appointed to the United States District Court for the Northern District of Texas. Justice Pederson succeeds her as a member of this panel.

(ii) the trial court erroneously denied his jury demand in connection with his requested permanent injunction;

(iii), (iv), and (v) the trial court abused its discretion regarding the possession order;

(vi) Father's child support payments are based on unrealistic net resources;

(vii) Father did not receive adequate credit for the travel expenses he must incur to visit the children;

(viii) the trial court abused its discretion by awarding Mother attorney's fees, expenses, and costs against Father; and

(ix) and (x) the court abused its discretion by ordering Father to reimburse Mother for uninsured medical expenses.

We affirm the trial court's order.

## I. ANALYSIS

### A. First Issue: Did the trial court err by allowing expert testimony from an untimely designated witness?

No, the trial court's scheduling order modified the rule based designation deadline.

The trial court entered a pre-trial order setting the deadline for all discovery, including expert witness designations, as thirty days before a May 17, 2018 trial. On December 27, 2017, Mother designated Patty Germany, a counselor, as a fact witness. More than two months before that trial date, Mother also designated Germany as an expert. That designation was timely under the trial court's scheduling order.

When Germany was called to testify, Father cited Rule 195 and complained that Germany had not been designated ninety days before trial. *See* TEX. R. CIV. P. 195. The judge overruled the objection, based on the scheduling order.

–2–

Father's first issue argues that Germany's designation was untimely and the trial court erred by allowing her to testify. This argument is misplaced under the rules. Specifically, rule 195.2(a) provides:

> **Unless otherwise ordered by the court**, a party must designate experts . . . by the later of the following two dates: 30 days after the request is served, or . . . 90 days before the end of the discovery period.

TEX. R. CIV. P. 195.2(a) (Emphasis added). But a trial court may to establish pretrial schedules governing the course of litigation. TEX. R. CIV. P.166. When a trial judge's pretrial scheduling order changes the deadlines stated in a procedural rule, the trial judge's order prevails. *Couvillion v. Columbia Med. Ctr. of McKinney Subsidiary LP,* No. 05-01-00305-CV, 2002 WL 193219, at *2 (Tex. App.—Dallas Feb. 8, 2002, pet. denied).

Here, the pre-trial order changed the expert designation date to thirty days before May 17, 2018. Germany's March 13, 2018 expert designation was well within the court's deadline. Accordingly, the trial court did not err by allowing Germany to testify as an expert, and we resolve Father's first issue against him.

**B.** **Second Issue: Was Father improperly denied a jury trial on the requested injunctive relief?**

No, Father agreed to a bench trial and did not object to the trial court proceeding that way.

Father's second issue argues that he was entitled to and denied a jury trial on Mother's requested injunctive relief.[2] Many of Father's citations concerning this and other arguments are to an appendix attached to his brief.[3] We may not consider items in an appendix that are not also in the appellate record. *See Deutsch v. Hoover, Bax & Slovack, L.L.P.*, 97 S.W.3d 179, 198–99 (Tex.

---

[2] The court's unchallenged findings state that Father requested a jury trial and (i) the contested issues at the time of trial were possession and access, child support, health insurance, attorney's fees, an enforcement action of medical arrears, and the entry of a qualified domestic relations order, and (ii) there were no contested issues to submit to a jury.

[3] Father's amended brief does not remedy this deficiency. And this case is unlike *Horton v. Stovall*, No. 08-0925, 2019 WL 6971668, at *1 (Tex. 2019) because the deficiencies are not merely a matter of record citations that could be amended. The appendix here includes documents that are not included in the clerk's record and that do not impact the outcome.

App.—Houston [14th Dist.] 2002, no pet.). Our inquiry is thus confined to material in the appellate record.[4]

Father claims he was denied his right to trial by jury at a motion for continuance hearing. But there is no reporter's record on this motion. Likewise, there is no written motion for continuance in the clerk's record.

Father also claims that he objected to a bench trial at the trial on the merits. But the record reflects otherwise. The January 8, 2018 pre-trial order states that the parties requested a bench trial and trial began with no recorded objection to proceeding that way. Instead, when trial commenced, Father's counsel explained why Father previously requested a jury on Mother's requested injunctive relief and said that Father was not trying to "frivolously litigate," and was "concerned about the way that litigation has occurred . . . ." Counsel then said, "Your Honor, my client is merely here asking that he be able to maintain the relationship and the visitation that he has with his kids." Because Father waived his jury demand and did not object to proceeding without a jury (or related ruling), Father's second issue presents nothing for our review and we resolve it against him. *See* TEX. R. APP. P. 33.1; *Bushell v. Dean*, 803 S.W.2d 711, 712 (Tex. 1991).

## C.  Third, Fourth, and Fifth Issues:  Did the trial court abuse its discretion regarding the possession order?

No, unchallenged fact findings support the trial court's order.

Father's third, fourth, and fifth issues complain that the possession order is an abuse of discretion because it: (i) reduces his weekend access to the children, is less than the standard possession order, and is unworkable; (ii) requires Father to temporarily reside in either Dallas or

---

[4] Items that are not included in the record, many of which are not relevant because they are superseded pleadings include: First Amended Counterpetition to Modify, Third Amended Counterpetition to Modify, Second Amended Answer, Counterclaims of Larry Davis, Motion for Continuance, Order on Motion for Continuance, Counterrespondent's Special Exceptions, Request for Jury Trial, and Mother's Proposed Parenting Plan.

Van Zandt county and restricts his visitation to either county; and (iii) reduces his summer access to the children to less time a standard possession order affords.

### 1. Standard of Review and Applicable Law

Trial courts have broad discretion in custody matters. *Coleman v. Coleman*, 109 S.W.3d 108, 110 (Tex. App.—Austin 2003, no pet.). Thus, we review a trial court's order under abuse of discretion standards. *See, e.g., In re M.P.B.*, 257 S.W.3d 804, 811–12 (Tex. App.—Dallas 2008, no pet.). We review the evidence in the light most favorable to the order and indulge every presumption in favor of the trial court's order. *In re S.E.K.*, 294 S.W.3d 926, 930 (Tex. App.—Dallas 2009). A trial court does not abuse its discretion if some evidence of a substantial and probative character exists to support its decision. *M.P.B.*, 257 S.W.3d at 811–12. Because the trial court is in the best position to observe the witnesses and their demeanor, it is given great latitude when determining the children's best interests. *In re S.E.K*, 294 S.W.3d at 930.

A court may modify conservatorship if (i) there is a material and substantial change in circumstances and (ii) it is in the child's best interest. *See* TEX. FAM. CODE §156.101(1).

In determining the child's best interest, a court may consider, inter alia: (i) her desires, (ii) her emotional and physical needs now and in the future, (iii) any emotional and physical danger to the child now and in the future, (iv) the parental abilities of the individuals seeking primary possession, (v) the programs available to assist these individuals to promote the child's best interest, (iv) the plans for the child by those seeking primary possession, (vii) the stability of the home or proposed placement, (viii) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one, and (ix) any excuse for the acts or omissions of the parent. *Holley v. Adams,* 544 S.W.2d 367, 371–72 (Tex. 1976).[5]

---

[5] Although *Holley* was a termination case, we have employed the *Holley* factors in modification cases as well. *See In re S.N.Z.*, 421 S.W.3d 899, 910 (Tex. App.—Dallas 2014, pet. denied).

In the specific context of conservatorship modification, courts also consider (x) the child's need for stability and (xi) the need to prevent constant litigation regarding conservatorship of the child. *In re C.A.M.M.*, 243 S.W.3d 211, 221 (Tex. App.—Houston [14th Dist.] 2007, pet. denied).

## 2. Deviation from Standard Possession Order

During the divorce's pendency and before the final decree was entered, Mother moved from San Antonio to Dallas. The divorce decree lists a College Station home and mailing address for Father.[6] The previous possession order provided that Father's visitation would occur in College Station. Father chose to exercise visitation rights for the first, third, and fifth weekends of the month. Thus, the children were driven 720 to 1,000 miles each month to accommodate Father's visitation schedule. The children were seven and nine years old at the time.

Father resided in San Antonio and the children were ten and twelve years old when the modified order was made.

Unchallenged fact findings are binding on the appellant. *See In re S.E.K.*, 294 S.W.3d 926, 930 (Tex. App.—Dallas 2009, pet. denied). The trial court's unchallenged fact findings regarding possession include:

- It is in the children's best interest that their summer access be defined with the least amount of moving parts possible;

- It is in the children's, best interest that Father spend one weekend a month in community where they reside and their activities occur;

- Father has relatives in Canton;

- Father has visited with the children in Canton, Texas at the relatives' home;

- The children were interviewed by the court as requested;

- The children are involved in extracurricular activities that require some weekend commitments;

---

[6] Father denies that he lived in College Station at the time, but cites to no evidence establishing this as fact. Nonetheless, the record suggests that Father's visitations occurred in College Station because he had a relative who lived there.

- Father is aware of the children's extracurricular activities;

- Father has been inflexible regarding important events and activities the children wish to attend;

- Father has a history and pattern of interpreting the Standard Possession Order in a manner inconsistent with the statutory intent, resulting in confusion and attorney fees and expenses for Mother;

- Father speaks negatively about the Mother in the children's presence;

- Father lacks insight into how his actions negatively impact his relationship with the children;

- The eldest child experiences emotional distress during visitation with Father;

- The eldest child currently participates in therapy to assist her in navigating some relationship issues with Father as well as other adolescent matters;

- Father has been given the opportunity to participate in the eldest child's therapy and has declined to do so;

- The current visitation order does not work and is unworkable;

- It is in the children's best interest to reduce travel time to and from visitation;

- It is in the children's best interest that Father has two weekends a month only if he exercises one weekend in the county where the children reside;

- It is in the children's best interest to continue visitation as a unit and not be separated; and

- The visitation schedule as ordered reflects the children's needs and takes into account their expressed desires.

These unchallenged fact findings specifically address the negative impact the previous visitation order had on the children and explain the court's deviation from the standard possession order. Moreover, the trial court's findings, including those mentioned above, indicate that the court considered the relevant factors for determining the children's best interests in this case. *See Holley*, 544 S.W.2d at 371–72; *see also In re J.A.*, 109 S.W.3d 869, 876–77 (Tex. App.—Dallas 2003, pet. denied).

Father does not argue that there was no material change in circumstances, so we need not consider that statutory prong. *See* FAM. CODE § 156.101 (1).

He also does not specifically challenge the trial court's fact findings, arguing generally instead that the modified order is not in the children's best interest. To this end, he cites *In re M.M.S.*, 256 S.W.3d 470, 476 (Tex. App.—Dallas 2008, no pet.), to argue that "the legislature established that a standard possession order provides the reasonable minimum possession of a child for a parent named as a joint managing conservator and a standard possession order is in the best interest of a child." Father then describes how the modified order deviates from a standard order and concludes that it is not in the children's best interest.[7]

Father's reliance on *M.M.S.* is misplaced because that case does not hold that the presumption concerning the standard order can never be rebutted or that the court may never deviate from the standard order. Instead, *M.M.S* held that there was no evidence supporting the court's order limiting the father's visitation in that case. *M.S.S.*, 256 S.W.3d at 476–77; *see also in re K.T.W.*, No. 05-08-0146-CV, 2010 WL 716417 at *4 (Tex. App.—Dallas March 3, 2010, no pet.) (mem. op.) (public policy of frequent contact between parent and child and the absence of evidence to support a finding limiting father's contact).

Despite the State's public policy to assure that children have "frequent and continuing contact with parents who have shown the ability to act in the best interest of the child," and to "encourage parents to share in the rights and duties of raising their child," *see* TEX. FAM. CODE §153.001(a), courts may limit a parent's possession of a child if such limitations are necessary for the child's best interest. *In re C.M.C.*, No. 05-15-01359-CV, 2016 WL 7166415, at *6 (Tex. App.—Dallas Nov. 9, 2016, no pet.) (mem. op.).

---

[7] He also argues that the modified order involves considerable travel time and expense for him and this is not in the children's best interest. He also maintains that requiring Mother to pay the travel expenses is in the children's best interest. While increased time and travel may not be in Father's best interest, he does not identify any evidence that his interests are the same as the children's interests.

In addition, Chapter 153 (initial determination of conservatorship, possession, and access) and Chapter 156 (modification) are distinct statutory schemes that involve different issues. *See* TEX. FAM. CODE §§ 153.01–.611; §§156.01–.410; *In re V.L.K.*, 24 S.W.3d 338, 343 (Tex. 2000). Thus, some courts have held that Chapter 153 presumptions do not apply to Chapter 156 proceedings. *See, e.g., In re C.A.N.M.*, No. 2-04-200-CV, 2005 WL 1356443, at *3 (Tex. App.—Fort Worth 2005, no pet.) (mem. op.). But we need not decide whether the standard possession presumption applies in this case because it would still be only a rebuttable presumption. *See In re S.A.H.*, 420 S.W.3d 91, 920–21 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

Here, the unchallenged findings support Father's inability to act in the children's best interest and demonstrate that modifying the standard order is in the children's best interest. Thus, we conclude that the trial court did not abuse its discretion by deviating from the standard possession order.

### 3. Visitation in Dallas and Van Zandt Counties

Father also complains that the trial court's order requires that he reside in Dallas or Van Zandt County for one weekend a month and prevents him from leaving these counties with the children.[8] According to Father, this violates his constitutional right to travel.

This argument was not raised in the court below. Nonetheless, assuming we are permitted to address this argument, we reject it.

Father's argument relies on *Shapiro v. Thompson*, 394 U.S. 618, 629 (1969). In *Shapiro*, the Supreme Court applied the compelling state interest test and held unconstitutional a state classification that imposed a one-year waiting period before new residents became eligible for public welfare assistance. The Court recognized that a state has a legitimate interest in attempting to limit its expenditures on welfare assistance, but that the state's classification was invidious

---

[8] The record reflects that Father has a relative in Canton, Texas (Van Zandt County) and that visitation has occurred there before.

because it impinged on the fundamental right of interstate travel without promoting a compelling state interest. *Id.* at 638.

But interstate travel is not implicated here because Bexar, Dallas and Van Zandt counties are all within the state.

### 4.      Summer Access

Father argues that there is no evidence to support a finding that it is in the children's best interest to deviate from the standard possession order by limiting his summer possession to thirty days. We disagree.

The evidence shows that when the original order was in effect, Father agreed to let his daughter (HD) participate in a summer program as long as Mother allowed visitation with the children at different times and agreed to give up one of her weeks with each child. HD told him that she did not want to visit him in San Antonio and asked to talk about it, but Father would not discuss it with her. He instead said that he knew why she didn't want to visit—because she wanted to see her friends and was missing events. He acknowledges that it was difficult for the children to make the trip three times a month.

Germany, a licensed professional counselor, testified that she had been counseling HD for about two years, and at the time of trial, was seeing her approximately every two weeks. Germany said that HD is very anxious around Father because he is angry, gives her dirty looks, screams, and "talks mean about her mother." Father sent Germany e-mails trying to demonstrate that Mother lied during the divorce case, and shared those opinions with HD. HD told Germany that she doesn't care about the court case—she just wants to be allowed to participate in school activities and attend events. Germany invited Father to attend a joint session with HD because Germany believed the two were not communicating. Father said he was unwilling to do so unless Mother agreed that Germany would not testify in court.

–10–

Germany suggested that Father allow HD to visit a friend while she was in San Antonio because she is very lonely. But Father would not agree because the friend is the daughter of his wife's friend.

HD told Germany that she would like for her visitation with Father to occur in Dallas so she does not miss sporting events, birthday parties, and other activities. HD "feels like" Father and her brother do "guy things" and Father does not pay attention to what she wants to do.

HD's relationship with Father has deteriorated over the past four years. She now cries in the car on the way to visit him.

The foregoing evidence supports the trial court's unchallenged findings that (i) the children expressed anxiety about visits with Father and reticence/reluctance about the original visitation arrangements; (ii) it is in the children's best interest that summer access be defined with the least amount of moving parts and that the children continue visitation as a unit; (iii) it is in the children's best interest to reduce the travel time to and from visitation; and (iv) the children are involved in extracurricular activities that involve some weekend commitments, Father is aware of these activities, and has been inflexible concerning important activities the children want to attend. The evidence also supports the trial court's finding that the visitation schedule reflects the children's needs and accounts for their expressed desires.

We consider the sufficiency of the evidence in family law cases in our assessment of whether the trial court abused its discretion. *In re W.C.B.*, 337 S.W.3d 510, 513 (Tex. App.—Dallas 2011, no pet.). Here, we conclude that there was sufficient evidence for the trial court to exercise its discretion to limit Father's summer access and did not err in exercising that discretion. *See id*. Father's third, fourth, and fifth issues are resolved against him.

**D.     Sixth and Seventh Issue:  Did the trial court miscalculate child support payments?**

No, the evidence supports the trial court's deemed monthly resources for Father and credit against the guideline support.

The modified order sets Father's child support obligation at $600 a month.  Father's sixth issue argues that the court abused its discretion "by calculating child support payments . . . based on unrealistic net resources."   Specifically, his sixth issue argues that: (i) the net resources attributable to him "are unattainable based on the possession order and travel requirements contained in the order"; (ii) "It is impossible for [him] to earn the monthly gross revenue dictated by the trial court in its order based on the numerous hours that [he] is now required to travel to conduct child exchanges"; and (iii) "it is impossible for [him] to earn the monthly gross revenue derived by the trial court in its order based on the non-billable days that [he] must endure to see his children."

Father's seventh issue argues the trial court did not award sufficient child support credits for the travel expenses he will now incur for visitation.

We reject both issues.

**1.     Standard of Review and Applicable Law**

We review a child-support determination for abuse of discretion.  *See Iliff v. Iliff*, 339 S.W.3d 74, 78 (Tex. 2011).  A trial court abuses its discretion if it acts arbitrarily or unreasonably, without reference to guiding rules or principles or fails to analyze or apply the law correctly.  *Id*.

Legal and factual sufficiency of the evidence are relevant considerations in our abuse of discretion analysis.  *In re A.M.W.*, 313 S.W.3d 887, 890 (Tex. App.—Dallas 2010, no pet.).  We review the evidence in the light most favorable to the order and indulge every presumption in the order's favor.  *Id*.  "If some probative and substantive evidence supports the order, there is no abuse of discretion."  *Id.*

The Family Code establishes guidelines "to guide the court in determining an equitable amount of child support." TEX. FAM. CODE § 154.121.2. This generally means calculating the child-support obligor's monthly "net resources" and applying the statutory guidelines (that is, a specific percentage based on the number of children) to that amount. *See In re P.C.S.*, 320 S.W.3d 525, 532–33 (Tex. App.—Dallas 2010, pet. denied); *see also* FAM. CODE § 154.125. But the trial court may use the obligor's earning potential instead of actual net resources if the obligor earns significantly less than he or she could earn because of intentional unemployment or underemployment. FAM. CODE 154.066(a).

The Family Code allows courts to deviate from the guidelines where its application would be "unjust" or "inappropriate." *See id*. § 154.122(b). In determining whether applying the guidelines would be unjust and inappropriate, courts must consider several issues, including "any financial resources available for the support of the child," as well as the "amount of the obligee's net resources including the earning potential of the obligee if the actual income of the obligee is significantly less than what the obligee could earn because the obligee is intentionally unemployed or underemployed . . . ." *Id*. § 154.123(b). The court may also consider "any other reason consistent with the best interest of the child, taking into consideration the circumstances of the parties." *Id*. § 154.123(b)(17).

## 2.     Evidence Supporting the Child Support Calculation

The court found that Father's monthly deemed net resources were $4,000 per month. This is arguably the only child support related finding that Father challenges. But the court made several other such findings that he does not challenge, including that (i) Father is well-educated and has two post-graduate degrees; (ii) Father intentionally left full-time employment; (iii) Father earns $40-50 per hour working thirty hours a week as a consultant and is intentionally under-employed; (iv) Father became a part-time law student in 2015 and has several years remaining in

–13–

law school; and (v) Father's child support obligation was unjust and not in the children's best interest.

The evidence shows that Father has two masters degrees, one in tax and one in finance, and charges clients $40-$50 an hour. He began law school approximately four years before trial, was taking six hours of course work, and still lacked thirty-three of the ninety hours required to graduate. Father said that he would be able to earn $70,000 per year as a law school graduate.

Father could not recall how many hours a week he works. He admits that thus far, he has only been paying minimum wage child support. His monthly budget was admitted into evidence and showed $2,747.75 in self-employment gross income with $106.44 in mobile phone business expense and $58.85 in business mileage expense.[9] Father said he works part-time to accommodate visits with his children.

Father introduced an estimate showing that visiting the children in Dallas would cost approximately $905 per trip. The estimate included $252.96 for air travel, $102.83 for car rental, and $36.00 for airport parking as well as meals and hotel room. Father admitted that he had a car that he could drive to Dallas, but said that he prefers to fly.

The trial court may have concluded that some or all of Father's testimony was not credible. Because the trial judge is best able to observe and assess the witnesses' demeanor and credibility, and to sense the 'forces, powers, and influences' that may not be apparent from merely reading the record on appeal," we defer to the trial court's judgment in such matters. *See In re A.L.E.*, 279 S.W.3d 424, 427 (Tex. App.—Houston [14th Dist.] 2009, no pet.).

Based on the evidence regarding Father's current hourly rates, working thirty hours a week at $40-$50 per hour yields $5,200-$6,500 per month. Using the $6,500 figure produces a net

---

[9]Father's brief argues that he incurs $250 monthly for office space rent related to his consulting business. But there is no evidence of this expense in the record.

monthly income of $4,655.45. *See* TEX. FAM. CODE §154.061. Deducting the $332.64 Father pays for the children's health insurance and $164.99 for business expenses leaves $4,157.42. *See id*. §154.062.[10] With two children, the child support obligation is 25% of the obligor's net resources, which is $1039.45 per month. *See id*. at 154.125. Thus, there is evidence to support the trial court's $4,000 deemed monthly net resources and a $1,000 guideline child support obligation.

The above calculations were based on Father's part time work. Attending school for six hours a week, however, actually leaves more than thirty hours remaining in a forty hour work week. There is no evidence that Father cannot work more than thirty hours per week, or that he, as a consultant, is confined to working Monday through Friday during regular office hours. In fact, Father testified that he sometimes worked at night.[11]

Although Father's guideline child support is $1,000 per month, the trial court allowed a $400 month child support credit for travel expenses. Father insists, however, that he should have received full credit for the $905 estimated cost of each Dallas visit because: (i) Mother i moved from San Antonio to Dallas and failed to overcome the best interest of the children presumption that she pay travel expenses and (ii) Mother makes significantly more money than he does.

We reject Father's premise concerning a presumption that it was in the children's best interest that Mother pay travel expenses. Family Code § 156.103 provides:

> (a) If a change of residence results in increased expenses for a party having possession of or access to a child, the court may render appropriate orders to allocate those increased expenses on a fair and equitable basis, taking into account the cause of the increased expenses and the best interest of the child.

> (b) The payment of increased expenses by the party whose residence is changed is rebuttably presumed to be in the best interest of the child.

---

[10] The only business expenses supported by the record are $106.44 for mobile phone and $58.85 for mileage.

[11] Father's brief provides detailed calculations that were not provided to the trial court concerning the number of hours he is unable to work because of the travel time and visitation with his children. Nonetheless, even if we were to consider these calculations, we are not persuaded by Father's argument that the trial court's order does not allow him to bill enough hours to generate sufficient income to meet the $600 per month child support obligation.

(c) The court may render an order without regard to whether another change in the terms and conditions for the possession of or access to the child is made.

Tex. Fam. Code §156.103.

Father's argument ignores that Mother moved to Dallas before the final decree was entered. Modification proceedings address changes that have occurred since the entry of the original order. *See In re K.A.M.S.*, 583 S.W.3d 335, 342 (Tex. App.—Houston [14th Dist.] 2019, no pet.). Because Mother did not change her residence after the final decree, her move to Dallas is not relevant to the modification.

Regardless, the statute empowers the court to make a fair and equitable allocation of increased expenses.[12] *See* Fam. Code §156.103. Father was previously going to College Station for visitation. He also has visited with the children in Canton where he has relatives. Thus, the record reflects that Father has traveled for visitation in the past.

Regarding the travel to Dallas, the court could have determined that a $400 offset was equitable because Father's $905 estimated cost per visit was excessive and could be reduced to $515 per visit by eliminating some expenses resulting from Father's choice to fly instead of drive. The court also questioned Father about the availability of law schools in the Dallas area, and may have concluded that Father could reside closer to the children and incur no travel expenses at all.

Father's argument that Mother makes significantly more money than he does is also unpersuasive. Father states that Mother makes $900,000 per year, but there is no support for this in the record. Instead, Father's record cite refers to Mother making about $90,000 yearly. And the trial court's unchallenged finding states that Mother's monthly net resources are $5,834. While those net resources exceed Father's, the difference is not as dramatic as Father suggests.

---

[12] To the extent Father now seeks to argue that the allocation was not fair and equitable, that issue has not been preserved for our review. *See* Tex. R. App. P. 33.1.

The evidence shows that the children were unhappy about traveling to San Antonio for visits and wished to remain in Dallas so they can participate in sports and other events. The children spent considerable time traveling to College Station under the prior order. And Father acknowledged that making the trip three times a month was difficult for the children.

Significantly, the trial court did not require Father to pay all of the increased expense. Rather, it allowed a $400 credit against the $1,000 guideline support. The modified order states that the court deviated from the guideline support based on the parties' respective ability to contribute to the children's support, travel costs for exercising possession of and access to the children, and the parents' current circumstances and best interests of the children. *See* TEX. FAM. CODE §§ 154.123(b)(2), (14), (17). There is evidence supporting these findings.

Therefore, we cannot conclude the trial court abused its discretion in calculating child support. Father's sixth and seventh issues are resolved against him.

**E. Eighth Issue: Did the trial court erroneously award attorney's fees against Father?**

No, the unchallenged findings support the court's discretion to award fair and reasonable fees.

Father's eighth issue argues that Mother should not recover attorney's fees because: (i) it is "not in the best interest of [the] children that he be required to pay . . . attorney's fees when [Mother] has a greater financial ability to litigate and minimize [Father's] time with his children"; (ii) Mother made unreasonable demands that prevented settlement of this matter; and (iii) because of "[Mother's] lack of clarity in her pleadings, [Mother's] desire to share [Father's] personal financial information with parties not involved in the case, and [Mother's] desire to divest [Father] of his separate property through two sets of QDRO fees."

Father provides no legal authority or analysis to demonstrate how any of the foregoing establish that the court abused its discretion in making the attorney's fees award. *See* TEX. R. APP.

P. 33.1; *see also Lenz v. Lenz,* 79 S.W.3d 10, 21 (Tex. 2002) (attorney's fees award within sound discretion of trial court).

Moreover, because Father does not challenge any of the trial court's attorney's fees findings, those findings are binding. *In re S.E.K.,* 294 S.W.3d 926 at 930. Those unchallenged findings include:

- Father has a history of filing pleadings with no merit that are later withdrawn or denied;

- Father repeatedly failed to disclose basic discoverable information regarding his income and required the mother to seek court intervention;

- It was necessary for mother to obtain an attorney to clarify the possession and access order and

- The fees incurred by the mother were reasonable and necessary pursuant to §106.002 Tex. Fam. Code.

Father does not specifically challenge the court's legal conclusion that "good cause exists to award $25,000 to mother as reasonable and necessary attorney's fees and expenses pursuant to §106.002 of the Texas Family Code." Likewise, he does not challenge the sufficiency of the evidence supporting the award. Instead, he argues generally that the court "abused its discretion."

Section 106.002 gives a trial court discretion to award reasonable attorney's fees in all suits affecting the parent-child relationship, including modification suits *In re B.J.W.,* No. 05-17-00253-CV, 2018 WL 3322882, at *1 (Tex. App.—Dallas July 6, 2018, no pet.) (mem. op.). Such an award, however, must be supported by evidence that fees are reasonable and necessary. *See Stewart Title Guar. Co. v. Sterling,* 822 S.W.2d 1, 10 (Tex. 1991) (court may award fees that are reasonable and necessary for prosecution of the suit).

There are several factors a trial court should consider in determining the amount of reasonable attorneys' fees to award. *Arthur Andersen & Co. v. Perry Equip. Corp.,* 945 S.W.2d 812, 818 (Tex. 1997). These factors include: the time, labor and skill required to properly perform

the legal service; the novelty and difficulty of the questions involved; the customary fees charged in the local legal community for similar legal services; the amount involved and the results obtained; the nature and length of the professional relationship with the client; and the experience, reputation and ability of the lawyer performing the services. *Id.*

Testimony from a party's attorney about a party's attorneys' fees is taken as true as a matter of law if the testimony "is not contradicted by any other witness and is clear, positive, direct, and free from contradiction." *Blockbuster, Inc. v. C–Span Entm't, Inc.*, 276 S.W.3d 482, 490 (Tex. App—Dallas 2008, pet. granted, judgm't vacated w.r.m.) (citing *Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 882 (Tex. 1990)).

Mother's attorney testified that she was board certified in family law, past president of the Dallas Bar family law section, and had practiced family law exclusively for twenty five years. She testified about her hourly rate and the rates of others working on the case, and detailed the amount of expenses, a summary of hours and fees by category. A summary of such fees and expenses was admitted into evidence without objection. Her detailed billing statements were also admitted without objection.

Mother's attorney explained that there were 61.8 hours of attorney time reflected on the statements and Mother had paid her $54, 212.12 to date. Mother's attorney further testified about what was done on the case and why, including details of how Father's numerous motions (many of which were denied) had necessitated additional action in the case. In fact, Mother's attorney noted that the docket sheet concerning this matter was over fourteen pages long. Mother's attorney opined that the fees charged were reasonable and necessary.

Based on the foregoing, we conclude that the trial court did not abuse its discretion by requiring Father to pay $25,000 of the attorney's fees Mother incurred and resolve Father's eighth issue against him.

**F.      Ninth Issue:  Did the trial court abuse its discretion by ordering Father to reimburse Mother for uninsured medical expenses "in violation of the Final Decree of Divorce"?**

No, the trial court could reasonably have found that Mother (i) sought to recover only unreimbursed medical expenses that the Decree obligated Father to pay and (ii) did not withhold any available supporting documents.

The trial court's order states that Mother's requested relief regarding unreimbursed medical expenses should be granted and awarded Mother a judgment against Father for $2,603 of such expenses.[13]  That sum includes dental expenses for both children and contacts for their daughter.

Father's ninth issue has two parts complaining about that award.  The first part concerns Mother's purported use of an out-of-network dental services provider without Father's or the court's prior approval.  We reject those arguments because the trial court's order approves those expenses as the Decree contemplate.  Additionally, the trial court could have reasonably determined that Father did not show that the dentist was an out-of-network provider.

This issue's second part concerns unreimbursed expenses generally for which Mother allegedly did not provide Father with a corresponding explanation of benefits.  We reject this issue because (i) the record shows that Mother provided detailed documentation for the expenses at issue (including EOBs) and (ii) the trial court could have reasonably determined that Father did not prove that Mother withheld additional available documents.

### 1.      Dental Expenses

Turning first to the dental expenses, Father first argues that the trial court's order is an abuse of discretion because (i) Father never provided his written consent to use an out-of-provider to perform those dental services and (2) Father never received an order from the trial court *prior to* incurring the out-of-network expenses.

---

[13] The trial court's fact findings support that judgment.  .

The Decree provision Father relies on states:

> Each party is ORDERED to use "preferred providers," or services within the health maintenance organization or preferred provider network, if applicable. Disallowance of the bill by a health insurance company shall not excuse the obligation of either party to make payment. Excepting emergency health-care expenses incurred on behalf of the children, if a party incurs health-care expenses for the children using "out-of-network" health-care providers or services, or fails to follow the health insurance company procedures or requirements, that party shall pay all such healthcare expenses incurred absent (1) written agreement of the parties allocating such healthcare expenses *or (2) further order of the Court*.

(Emphasis added).

We reject Father's arguments for several reasons. First, assuming this provision applies to Mother's dental insurance for the children and Mother used an out-of-network provider, as the clause provides the Court nonetheless ordered Father to pay those uncovered expenses. Although Father argues that the Decree requires a "prior" court order, the Decree imposes no such requirement. All that the Decree's unambiguous terms require is that the parties bring the matter to the trial court's attention and ask the court to exercise its discretion, which it did. We decline Father's invitation for us to add words to the Decree that are not there and reject Father's ninth issue accordingly.

Second, Father has not shown that Mother in fact used an out-of-network provider. Although the Decree did not require Mother to do so, she maintained dental insurance for the children. But Father failed to conclusively prove the dentist Mother used was not in a preferred provider network. Thus, the trial court could have disbelieved Father's statement that Mother did not use an in-network provider.

### 2. Medical Expenses Generally

Father next argues that he should not have to pay his share of his children's health care bills because Mother allegedly did not present reimbursable expense supported by an "Explanation of Benefits." More specifically, Father contends that Mother did not comply with the Decree's

requirement that she provide him all forms, including explanation of benefits, receipts, bills, and statements reflecting the uninsured portion of the health-care expenses within thirty days after Mother received them as the Decree requires.

We reject these arguments for several reasons. To begin, the record has exhibits consisting of medical bills showing the services provided, the charges incurred, and the payments made. And Father testified that Mother has provided him with EOBs.

Next, Father does not identify what specific documents were tendered untimely or what additional documents exists that Mother did not provide.

Although Father orally testified that Mother's EOBs show that she had not fully followed all the steps necessary to maximize the insurance payments, he did not offer those documents into evidence or say specifically what he thought Mother had not done properly.

Based on this record, the trial court could have reasonably concluded that (i) any missing EOBs would not have supported Father's claims that Mother had not complied with required procedures, (ii) Father's oral testimony was not credible, and (iii) Mother complied with the Decree by timely submitting the available documentation, and (iv) Mother's documents support her entitlement to the unreimbursed medical expenses.

**G.     Tenth Issue: Did the trial court abuse its discretion by ordering Father to reimburse Mother for uninsured medical expenses (contact lens) that were not reasonable and necessary?**

No. The trial court was free to reject Father's opinion that the daughter's contact lens related expenses were not necessary or reasonable.

The decree provides that Mother and Father are each responsible for 50% of the reasonable and necessary healthcare expenses not reimbursed by health insurance if Mother is providing health insurance as required. Father's tenth issue argues that $1,500 in uninsured expenses incurred for his teenage daughter's contact lenses were not "reasonable and necessary."

It is undisputed that Mother was providing health insurance and the optometrist charge was not covered by insurance.[14] Furthermore, the record shows that their daughter needs vision correction, which by prescription Mother provided with contact lenses.

Although Father testified that he was willing to pay for an eye exam and glasses, he disputes the amount incurred and argues that Mother failed to provide expert documentation that contact lenses (apparently instead of glasses) were necessary. But Father provides no authority holding that expert documentation was required or that Mother had the burden to produce it. He further argues that no appellate cases define what is "fair and reasonable" or provide factors to consider in making this determination, and seems to suggest that we should create some.

Whether contacts, instead of glasses, for this teenage girl and the amount spent for them were reasonable and necessary were fact questions for the trial court to decide, and we decline Father's invitation to second guess that decision on this record.

Although Father complained that the contact lens charges were not reasonable, the only evidence he offered was his opinion that contact lenses are a luxury. Father also said that he had limited means to contribute towards contact lenses for a child. But the trial judge who watched Father testify had the discretion to reject his opinion that contact lenses were not reasonable and he could not afford to contribute. Therefore, the trial court did not abuse its discretion by requiring Father to pay his share of those expenses. Thus, we resolve Father's tenth issue against him.

## II. CONCLUSION

Having resolved all of Father's issues against him, we affirm the trial court's order.

/Bill Whitehill/

BILL WHITEHILL
JUSTICE

180968F.P05

---

[14] In fact, the Decree provision Father relies on contemplates such unreimbursed expenses, stating that "Reasonable and necessary health-care expenses not paid by insurance and incurred by or on behalf of a child include, without limitation, any copayments for office visits or prescription drugs, the yearly deductible, if any, and medical, surgical, prescription drug, mental health-care services, dental, **eye care, ophthalmological**, and orthodontic charges." (Emphasis added).



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

IN THE INTEREST OF H.K.D. AND
J.R.D., CHILDREN,

No. 05-18-00968-CV

On Appeal from the 330th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DF-17-15411.
Opinion delivered by Justice Whitehill.
Justices Schenck and Pedersen, III
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

It is **ORDERED** that appellee
recover her costs of this appeal from appellant IN THE INTEREST OF H.K.D. AND J.R.D.,
CHILDREN.

Judgment entered January 28, 2020.