

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-25-00401-CV

_____

BLAKE VAUGHN, Appellant

V.

ALBERT LI, Appellee

On Appeal from County Court at Law No. 3
Tarrant County, Texas
Trial Court No. 2023-001902-3

Before Kerr, Bassel, and Wallach, JJ.
Memorandum Opinion by Justice Bassel

# MEMORANDUM OPINION

## I. Introduction

In this landlord–tenant dispute, Appellant Blake Vaughn (Tenant)[1] appeals the trial court's judgment allowing Appellee Albert Li (Landlord) to retain $1,069.68 of Tenant's $1,950.00 security deposit; awarding Tenant a judgment against Landlord for $880.32 for improper retention of Tenant's security deposit but finding there was insufficient evidence that Landlord had acted in bad faith; and awarding Landlord a judgment against Tenant for court costs. In three issues, Tenant argues that the trial court improperly denied his attorney's fees and court costs and improperly awarded Landlord court costs, that the trial court erred by finding in favor of Landlord on Tenant's statutory-lockout counterclaim, and that Landlord did not rebut the presumption of bad-faith retention of Tenant's security deposit. Because there is some evidence to support unchallenged findings of fact that are relevant to each of Tenant's arguments, and because the trial court did not abuse its discretion by awarding costs solely to Landlord, we affirm.

## II. Background

### A. The Relevant Lease Terms

The lease required the payment of a $1,950 security deposit, which Tenant paid prior to his brothers' and his mother's moving into the premises owned by Landlord.

---

[1]For ease of reference, we use the term Tenant even though he did not live at the premises. As demonstrated by the record, Tenant paid the security deposit and the rent for his mother and his two brothers to reside at the premises.

The lease began on March 25, 2021, and pursuant to an extension, Tenant was permitted to remain at the premises until the end of the day on April 30, 2022.

Other relevant terms in the lease included the following:

**13.1  Damage in the Dwelling.**  You must promptly pay or reimburse us for loss, damage, consequential damages, government fines or charges, or cost of repairs or service in the dwelling because of a Lease or rules violation; improper use; negligence; other conduct by you, your invitees, your occupants, or your guests; or any other cause not due to our negligence or fault as allowed by law, except for damages by acts of God to the extent they couldn't be mitigated by your action or inaction.

. . . .

**24.3  Alarm and Detection Devices.**

**(A)** *What we'll do.*  We'll furnish smoke alarms or other detection devices required by law or city ordinance. . . .

**(B)** *Your duties.* . . .  Neither you nor others may disable alarms or detectors.  *If you damage or disable the smoke alarm, or remove a battery without replacing it with a working battery, you may be liable to us under Texas Property Code [S]ec. 92.2611 for $100 plus one month's rent, actual damages, and attorney's fees.*  You'll be liable to us and others if you fail to report malfunctions, or fail to report any loss, damage, or fines resulting from fire, smoke, or water.

. . . .

**25.2  Standards and Improvements.**  You must use customary diligence in maintaining the dwelling and not damaging or littering the outside areas.  Unless authorized by law or by us in writing, you must not do any repairs, painting, wallpapering, carpeting, electrical changes, or otherwise alter our property.  No holes or stickers are allowed inside or outside the dwelling.  Unless our rules state otherwise, we'll permit a reasonable number of small nail holes for hanging pictures on sheetrock walls and grooves of wood-paneled walls.  <u>No</u> water furniture, washing machines, extra phone or television outlets, alarm systems, or <u>lock</u>

changes, additions, <u>or rekeying is permitted unless allowed by law or we've consented in writing</u>. . . . <u>You must not alter, damage, or remove our</u> property, including alarm systems, detection devices, furniture, telephone and television wiring, screens, <u>locks</u>, and security devices. . . .

. . . .

**32.5 Other Remedies.** . . . <u>A prevailing party may recover reasonable attorney's fees and all other litigation costs from the nonprevailing parties, except a party may not recover attorney's fees and litigation costs in connection with a party's claims seeking personal-injury, sentimental, exemplary[,] or punitive damages. We may recover attorney's fees in connection with enforcing our rights under this Lease</u>. All unpaid amounts you owe, including judgments, bear 18% interest per year from the due date, compounded annually. . . .

. . . .

**37. Move-out Procedures.** The move-out date can't be changed unless we and you both agree in writing. You won't move out before the Lease term or renewal period ends unless all rent for the entire Lease term or renewal period is paid in full. Early move-out may result in reletting charges and acceleration of future rent under Par. 10 and 32. You're prohibited by law from applying any security deposit to rent. You can't stay beyond the date you're supposed to move out. All residents, guests, and occupants must surrender or abandon the dwelling before the 30-day period for deposit refund begins. <u>You must give us and the U.S. Postal Service, in writing, each resident's forwarding address</u>.

**38. Cleaning.** You must thoroughly clean the dwelling, including doors, windows, furniture, bathrooms, kitchen appliances, patios, balconies, garages, carports, and storage rooms. You must follow move-out cleaning instructions if they have been provided. If you don't clean adequately, you'll be liable for reasonable cleaning charges—including charges for cleaning carpets, draperies, furniture, walls, etc.[,] that are soiled beyond normal wear (that is, wear or soiling that occurs without negligence, carelessness, accident, or abuse).

. . . .

4

**40.  Security Deposit Deductions and Other Charges.**  You'll be liable for the following charges, if applicable:  . . . repairs or damages caused by negligence, carelessness, accident, or abuse, including stickers, scratches, tears, burns, stains, or unapproved holes; replacement cost of our property that was in or attached to the dwelling and is missing; replacing dead or missing alarm or detection-device batteries at any time; utilities for repairs or cleaning; . . . removing or rekeying unauthorized security devices or alarm systems; . . . and other sums due under this Lease.  You'll be liable to us for:  (A) charges for replacing any keys and access devices referenced in Par. 5 if you don't return them all on or before your actual move-out date; (B) accelerated rent if you've violated Par. 32; and (C) a reletting fee if you've violated Par. 10.  *We may also deduct from your security deposit our reasonable costs incurred in rekeying security devices required by law if you vacate the apartment in breach of this Lease.*  [Underlined emphasis added.]

With those lease provisions in mind, we turn to the problems that occurred during moveout.

## B.    Landlord's Perspective on the Moveout

Around 9:00 or 10:00 a.m. on April 30, 2022, Landlord went to the premises and found the door open.  Even though there were boxes in the kitchen and the garage was "full of stuff," he saw that there were tall weeds in the yard and concluded that Tenant had moved out one to two weeks prior.  In addition to the front door being open, Landlord discovered that all four locks had been changed.  Landlord texted Tenant and Tenant's mother regarding the changed locks and received no response.

Landlord waited for a bit to see if anyone would come pick up the remaining belongings.  When no one came, he began working on the premises.  In order to secure the premises when he left at 7:00 p.m., Landlord changed the lock and keyed it

5

to work with the key that he had previously given Tenant.  Landlord moved some of the items that were left in the kitchen to the backyard so that potential tenants would not see a mess inside.

At 8:50 p.m., Tenant's mother texted Landlord that she could not get into the property to retrieve her remaining items because she did not have the old key. Landlord set a date when Tenant could retrieve the items; he did not keep any of Tenant's items.

Landlord testified that several rooms had to be recarpeted after Tenant moved out due to various types of damage.  Additionally, Landlord filled holes and painted walls to repair damage that he claimed was beyond normal wear and tear.  Landlord also had to replace a smoke detector that Tenant had removed.  Based on the damage to the home, Landlord emailed Tenant a list of itemized charges showing a total of $1,649.35 in damages beyond the security deposit:

| Beginning Balance | 1950 | | | |
|---|---|---|---|---|
| | | 0 | Rent Late Fees | ($55 Waivered, Late on April 4th) |
| | | -156.87 | Locks | Tenants removed the Kiwest SmartKey |
| | | -150 | Lock replacement Labor | |
| | | -55 | Garage Door | Service Call to make it functional |
| | | -50 | Yard and Bushes | |
| | | 39.7 | Fire Alarm and Door stoppers | |
| | | 100 | Labor | |
| | | -55 | Master Bath Shower Leaking | Service Call to repair |
| | | -112.93 | Paint and Supply (Marajuana Smell Treatment ) | Lowe's |
| | | -575 | Cleaning(Marajuana Smell Treatment) and supply Labor | Hilary's Home Solutions (682-207-8062) |
| | | -243.56 | Carpet Cleaning | 1 and Done Carpet Cleaning. |
| | | -200 | Holes on the Walls (2 Big ones) | Need to fill the holes and repaint the walls |
| | | -300 | Painting 3 Walls (Stains and execessive number of holes for hanging) | Need to fill the holes and repaint the walls |
| | | -1840.69 | Carpets of 2 bedrooms carpets and Hallway 405 sqft | One has three holes in it due to chewing gums. The other has dark stain and was not removed with deap calening. Hallway Carpet ripped in two places. |
| Ending Balance | -1649.35 | | | |

Tenant acknowledged receiving the email. Landlord testified that he did not mail the itemized-charges list because he and Tenant had agreed that email was acceptable.

### C.    Tenant and His Mother's Perspective on the Moveout

Tenant's mother testified that Landlord came to the property on Friday, April 29, 2022, and raved about the cleaning job that she had done to prepare the home for new tenants.[2] When she returned to the home on the evening of April 30, 2022, to remove her remaining items (including a medical device that she used daily), the locks had been changed, and half of her belongings were on the grass. She did not recall having left the door open and said that she always locked the door.

Tenant testified that his mother texted him at approximately 8:00 p.m. and said that Landlord had thrown "everything on the side of the house" even though they had paid rent to stay until midnight. Tenant texted Landlord and asked when his mother could retrieve her belongings that were still inside the house. According to Tenant's screenshots of his text messages, Landlord replied that he had "moved a lot of stuff outside" and said that he would not be back to the premises until Tuesday. Tenant texted Landlord, "You have illegally removed our contents from this house and blocked our entry. You potentially damaged our property. We also have a very expensive piece of medical equipment missing. This is serious." Landlord responded

---

[2]During rebuttal, Landlord admitted that he did a "very quick" walk-through of the property on April 29 and found that the carpet had been cleaned well except for several pink stains; he said that he changed his mind about the carpet's condition after the new tenants raised concerns about the carpet once they had moved in.

by changing the subject. Landlord ultimately allowed the remaining belongings to be retrieved on May 3, 2022.

Tenant later texted the address for Landlord to use when returning the security deposit; Landlord said that he would return the deposit, "less the applicable deductions," within thirty days. Towards the end of May, Landlord texted Tenant that the new tenants had identified a marijuana odor and damaged carpets.

When questioned about items on Landlord's itemized-charges spreadsheet, Tenant's mother said that Landlord had never mentioned a marijuana odor to her. She said that neither she nor her sons smoke anything. She did not recall whether she had removed any smoke detectors.

Regarding holes in the walls and the damage to the carpet, Tenant's mother claimed that there were "no holes anywhere except where the TV hung," that the holes were there at move-in, that the carpet was not clean at move-in, and that she and her sons did not damage the carpet. At the time of the moveout, Tenant's mother believed that the carpet was in good shape. But when asked if the carpet in the whole house needed to be replaced, she said not the whole house but that the carpet in one bedroom might not have been cleaned to Landlord's standards.

Tenant's mother agreed that she had a locksmith change the locks and that she did not tell Landlord; she thought she was doing him a favor. She did not recall giving him a key and had not left her key under the mat on April 30 as instructed by Landlord because she still had items to retrieve.

After Tenant received the itemized-charges list, he put comments on it and sent it back to Landlord:

- Tenant did not dispute the locks or the lock-replacement labor because he believed that when they had replaced the door, they had replaced the locks. Tenant did not know if a new key was given to Landlord but assumed that none was given "based on this situation."

- Tenant believed that the garage door had been repaired prior to moveout but that Landlord "was having some sort of difficulty with the remote not working for the door"; Tenant explained that he may have failed to give Landlord a new remote after the garage door was repaired.

- Tenant disputed the charges for the yard and the bushes, claiming that there were no damages to those items and that he would not pay to upgrade the landscaping.

- Tenant did not dispute the charge for the fire alarm and the door stoppers because the total was only $39, plus $100 for labor; he did not, however, acknowledge any damage to those items.

- Tenant disputed the charges for the leaking shower head as "faulty infrastructure" because he did not believe his family members had caused the leak.

- Tenant disputed the holes in the walls (claiming that there were already holes in the walls, though they "may have added some") and the stained and damaged carpet, claiming that they were issues that predated Tenant. Tenant said that he had paid for carpet cleaning right after moving in and again upon moveout. He had not seen any obvious tears in the carpeting when he had visited his family members during the lease but was not present during the moveout.

## D.    The Trial-Court Proceedings[3]

In Landlord's first amended original petition filed in the trial court, he alleged causes of action for breach of contract and unlawful removal of a smoke alarm[4] and sought to recover $3,699 in actual damages,[5] $3,500 in attorney's fees, and court costs. Tenant filed a supplemental answer seeking reasonable and necessary attorney's fees "pursuant to the contract between the parties and the causes of action ple[aded]." Tenant also asserted a myriad of counterclaims by which he sought to recover approximately $19,000.[6]

The trial, at which the trial court heard the testimony summarized above, took place on July 25, 2024, and October 24, 2024.   Additionally, Landlord's attorney testified to his fees, seeking $3,000, and Tenant's attorney testified to his fees—$5,275

---

[3]Landlord filed a small-claims petition in the justice court seeking $1,649, and Tenant filed "a variety of counterclaims" though his pleadings are not included in the record.  Tenant prevailed in that court, and Landlord appealed to the county court at law (the trial court).

[4]Landlord pleaded that Tenant had removed the smoke alarms without notice to Landlord in violation of Texas Property Code Section 92.2611 and that the Property Code provides for damages of $100 plus one month's rent ($100 plus $1,950 equals $2,050).  *See* Tex. Prop. Code § 92.2611(a), (e).

[5]This amount is based on the $1,649 in damages that exceeded the security deposit plus the $2,050 for the smoke-alarm damages.

[6]As noted above, Tenant's other pleadings are not in the record.  From what we can glean from the final judgment and other documents in the record, Tenant counterclaimed for improper retention of his security deposit, retaliation, and unlawful lockout.  Tenant's counterclaims for defamation, libel, and blackmail were dismissed for lack of subject-matter jurisdiction.

10

through trial; $7,500 for an appeal to this court; and $5,000 for an appeal to the Texas Supreme Court.

At the conclusion of the trial, the trial court took the matter under advisement and later announced its ruling by email.[7] Before a final judgment was signed, Tenant filed a motion for clarification and reconsideration. In that motion, Tenant provided the following summary of the trial court's ruling and his request for clarification:

> While the [c]ourt did not find that [Tenant] was entitled to recover on some of his counterclaims, the [c]ourt did find that [Tenant] was entitled to affirmative relief in the form of recovery of a portion of the security deposit and that [Landlord] would not recover for any of the additional alleged damages for which he sued beyond the amount of the deposit. However, the [c]ourt also ruled that [Landlord] was entitled to recover court costs and post[]judgment interest[] and that neither party was entitled to recover attorney's fees from the opposing party.
>
> [Tenant] seeks clarification as to who[m] the [c]ourt has determined to be the prevailing or successful party in this cause[] and reconsideration of the award of costs and lack of award of attorney's fees to [Tenant].

At the hearing on Tenant's motion to clarify and for reconsideration, the trial court explained how it had determined to award Landlord costs but to not award either party attorney's fees:

> I wrestled with this, and I ultimately came to the conclusion that [Tenant] was seeking $19,000 and won [$]800. And [Landlord] was seeking $8,000 and received [$]1,500 or thereabouts.
>
> And so I thought it didn't make sense, since it was so piecemeal, to award attorney's fees. And because [Landlord] had pl[ead]ed for less -- he recovered a higher proportion of what he was seeking, I decided

---

[7]The trial court's email is not in the record before us.

11

that is how I would determine he was the prevailing party and award him court costs. . . .

[Landlord], it was determined was entitled to retain a large portion of the security deposit, and it was determined that [Tenant] was entitled to recover a withheld portion of the security deposit.

The trial court thereafter rendered a final judgment in which it ordered that Landlord was entitled to retain $1,069.68 of the security deposit, that Landlord was not entitled to recover on his smoke-alarm-removal claim, that Tenant was entitled to recover $880.32 of the security deposit but that there was insufficient evidence that Landlord had acted in bad faith in retaining the deposit, and that Landlord was entitled to court costs. This appeal followed.

### III. Tenant's Counterclaim Challenges

We first address Tenant's second and third issues, which challenge the trial court's rulings on two of his counterclaims, because they form part of the bases for the trial court's decision to award Landlord costs as the prevailing party—a decision challenged in Tenant's first issue. After setting forth the applicable standard of review, we discuss Tenant's second and third issues in turn.

#### A. Standard of Review

A trial court's findings of fact have the same force and dignity as a jury's answers to jury questions. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991); *Robbins v. Robbins*, 550 S.W.3d 846, 854 (Tex. App—Fort Worth 2018, no pet.). As with jury findings, a trial court's fact-findings on disputed issues are not

conclusive, and when the appellate record contains a reporter's record, an appellant may challenge those findings for evidentiary sufficiency. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994); *Super Ventures, Inc. v. Chaudhry*, 501 S.W.3d 121, 126 (Tex. App.—Fort Worth 2016, no pet.). We review the sufficiency of the evidence supporting challenged findings using the same standards that we apply to jury findings. *Catalina*, 881 S.W.2d at 297.

We may sustain a legal-sufficiency challenge—that is, a no-evidence challenge—only when (1) the record bears no evidence of a vital fact, (2) the rules of law or of evidence bar the court from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence establishes conclusively the opposite of a vital fact. *Gunn v. McCoy*, 554 S.W.3d 645, 658 (Tex. 2018). In determining whether legally sufficient evidence supports the challenged finding, we must consider evidence favorable to the finding if a reasonable factfinder could, and we must disregard contrary evidence unless a reasonable factfinder could not. *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007); *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We indulge "every reasonable inference deducible from the evidence" in support of the challenged finding. *Gunn*, 554 S.W.3d at 658 (quoting *Bustamante v. Ponte*, 529 S.W.3d 447, 456 (Tex. 2017)). A party who "attacks the legal sufficiency of an adverse finding on an issue on which [the party] has the burden of proof . . . must

demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue." *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001).

When reviewing an assertion that the evidence is factually insufficient to support a finding, we set aside the finding only if, after considering and weighing all the pertinent record evidence, we determine that the credible evidence supporting the finding is so weak, or so contrary to the overwhelming weight of all the evidence, that the finding should be set aside and a new trial ordered. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986) (op. on reh'g); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). When a party attacks the factual sufficiency of an adverse finding on an issue on which he has the burden of proof, he must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence. *Dow Chem.*, 46 S.W.3d at 242.

We review a trial court's conclusions of law de novo. *Hegar v. Am. Multi-Cinema, Inc.*, 605 S.W.3d 35, 40 (Tex. 2020). We may review conclusions of law to determine their correctness based upon the facts, but we will not reverse because of an erroneous conclusion if the trial court rendered the proper judgment. *City of Austin v. Whittington*, 384 S.W.3d 766, 779 n.10 (Tex. 2012) (citing *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002)); *City of Forest Hill v. Benson*, 555 S.W.3d 284, 289 (Tex. App.—Fort Worth 2018, no pet.).

**B.      Statutory-Lockout Counterclaim**

In his second issue, Tenant argues that the trial court erred by finding in favor of Landlord on Tenant's statutory-lockout counterclaim.  Specifically, Tenant argues that the evidence is legally and factually insufficient to support the trial court's "finding" that Landlord did not commit a statutory lockout.[8]  Because Tenant ignores the trial court's finding that Tenant had committed the initial lockout by changing the locks without Landlord's permission, we rule against Tenant and uphold the trial court's determination that Landlord did not commit a statutory lockout.

**1.      Applicable Law**

Tenant's counterclaim is based on Texas Property Code Section 92.0081(b), which provides that

> [a] landlord may not intentionally prevent a tenant from entering the leased premises except by judicial process unless the exclusion results from:
>
>> (1) bona fide repairs, construction, or an emergency;
>>
>> (2) removing the contents of premises abandoned by a tenant; or
>>
>> (3) changing the door locks on the door to the tenant's individual unit of a tenant who is delinquent in paying at least part of the rent.

Tex. Prop. Code § 92.0081(b).  If a violation is established, the tenant may recover from the landlord a civil penalty of one month's rent plus $1,000, actual damages,

---

[8]Although Tenant refers to this as a finding, it was entered as a conclusion of law.

15

court costs, and reasonable attorney's fees in an action to recover property damages, actual expenses, or civil penalties, less any delinquent rent or other sums for which the tenant is liable to the landlord. *Id.* § 92.0081(h)(2).

### 2. Relevant Findings of Fact and Conclusions of Law

The findings of fact that are relevant to Tenant's statutory-lockout counterclaim are as follows:

> 3. After the lease expired and [Tenant had] moved out, [Landlord] inspected the property and found it apparently (although not legally) abandoned with the front door open and realized that [Tenant] had changed the lock[s] to the property in violation of the Lease. Unable to otherwise secure the Premises[, Landlord] installed a new lock on the front door which was the action of a reasonable and prudent property owner.
>
> 4. [Landlord] was at the property from the morning of April 30, 2022[,] until well into the evening. When [Tenant] did not return in the evening[, Landlord] left the Premises with the new lock installed on the front door to which [Tenant] had no key.
>
> 5. Later in the evening of April 30, 2022, [Tenant] contacted [Landlord,] who agreed to meet with [Tenant] a few days later to allow [Tenant] to remove any additional personal property he may have left at the Premises.
>
> 6. [Landlord] found damage to the Premises beyond normal wear and tear and removed certain personal property from the Premises[,] which appeared to him to have been abandoned.
>
> . . . .
>
> 19. Although a reasonably prudent property owner would have considered the Premises abandoned, "abandonment" as defined by Paragraph 41.3 of the Lease did not occur as all elements required were not met. The Premises [were] left unsecured[,] and all parties acknowledge [Tenant had] changed the locks and [had] never provided

16

[Landlord] a copy of the key. [Landlord] spent most of the day inside the Premises. Because the property was unsecured[,] a reasonable owner would take action to secure it as [Landlord] did.

. . . .

23. [Landlord] did not lock [Tenant] out of the Premises as [*Tenant*] *had first breached the contract* by changing the locks on the Premises without [Landlord]'s consent and did not provide a key to [Landlord]. [Emphasis added.]

The trial court made the following conclusion of law related to the statutory-lockout counterclaim: "11. The conduct of [Landlord] did not rise to the level of a statutory lock[]out of [Tenant]."

### 3. Analysis

Here, Tenant focuses his arguments on Section 92.0081(b)'s criteria, attempting to show that no repairs, construction, or emergencies had occurred on April 30; that the premises had not been legally abandoned;[9] and that he was not delinquent in paying rent. Tenant relies on Landlord's admission that he had changed the locks while Tenant was moving out and did not give Tenant a new key. But Tenant failed to challenge Finding of Fact No. 23, which specifically finds that Tenant had breached the lease first by changing the locks prior to Landlord's changing the locks. Both Tenant and his mother admitted at trial that prior to April 30, they had changed the locks without notice to Landlord and had not given him a key, thus locking out

---

[9]Of the findings of fact and conclusions of law set forth above, Tenant specifically mentions only Findings of Fact Nos. 3 and 19, which are related to the abandonment criterion under Section 92.0081(b)(2).

Landlord. This is some evidence to support the trial court's unchallenged finding of fact. *See Tenaska Energy, Inc. v. Ponderosa Pine Energy, LLC*, 437 S.W.3d 518, 523 (Tex. 2014) ("We defer to unchallenged findings of fact that are supported by some evidence."); *cf. Klekotka v. Deneve*, No. 09-10-00255-CV, 2011 WL 550081, at *4 (Tex. App.—Beaumont Feb. 17, 2011, pet. dism'd w.o.j.) (mem. op. on reh'g) (concluding that evidence sufficiently supported trial court's decision denying tenants any recovery on their statutory claim related to the installation of keyless bolting devices because they had breached the lease first by failing to fully pay their rent and had failed to specifically challenge that finding). Moreover, even if Tenant had challenged Finding of Fact No. 23, he failed to carry his burden on his statutory-lockout counterclaim to show as a matter of law that he was not the first to breach the lease by locking out Landlord, as well as that the finding is against the great weight and preponderance of the evidence.

Accordingly, we hold that the evidence is legally and factually sufficient to support the trial court's statutory-lockout findings and that Conclusion of Law No. 11 is correct. We therefore overrule Tenant's second issue.

### C. Security-Deposit-Retention Counterclaim

In his third issue, Tenant argues that Landlord did not rebut the presumption of bad-faith retention of Tenant's security deposit. Specifically, Tenant contends that Landlord did not present factually or legally sufficient evidence to rebut the bad-faith presumption because he sent the itemized-charges list to Tenant via email instead of

18

via mail. Because Tenant failed to challenge the trial court's finding that the parties consented to the use of email, we rule against him on his third issue.

## 1. Applicable Law

A landlord is required to refund a security deposit to a tenant within thirty days of the tenant's surrendering the premises. Tex. Prop. Code § 92.103(a). But "[b]efore returning a security deposit, the landlord may deduct from the deposit damages and charges for which the tenant is legally liable under the lease or as a result of breaching the lease." *Id.* § 92.104(a). The landlord, however, may not retain any portion of a security deposit to cover normal wear and tear. *Id.* § 92.104(b). "If the landlord retains all or part of a security deposit . . . , the landlord shall give to the tenant the balance of the security deposit, if any, together with a written description and itemized list of all deductions." *Id.* § 92.104(c). "The landlord is not obligated to return a tenant's security deposit or give the tenant a written description of damages and charges until the tenant gives the landlord a written statement of the tenant's forwarding address for the purpose of refunding the security deposit." *Id.* § 92.107(a). "A landlord who fails either to return a security deposit or to provide a written description and itemization of deductions on or before the thirtieth day after the date the tenant surrenders possession is presumed to have acted in bad faith." *Id.* § 92.109(d).

## 2. Relevant Findings of Fact and Conclusions of Law

The findings of fact relevant to Tenant's third issue are as follows:

19

8. [Landlord] timely provided [Tenant] a detailed move-out report of the damage he found during the post-lease inspection and withheld the full amount of the deposit. [Landlord] also sought damages to the Premises in addition to the deposit withheld. The communications were made via electronic mail[,] and the parties engaged in an extended exchange regarding the Premises via this medium.

. . . .

20. Insufficient evidence was presented that [Landlord] acted in bad faith in determining the amount of [the] security deposit to be withheld.

21. [Landlord] and [Tenant] consented to the use of email to resolve the security[-]deposit issue[,] so there can be no presumption of bad faith with regard to the retention by [Landlord]. [Tenant] provided his forwarding address to [Landlord] only via email. [Landlord] provided an itemized list of deductions from the security deposit within 30 days of [Tenant]'s surrender of the Premises.

The relevant conclusions of law are as follows:

5. The parties['] consistent use of email to communicate regarding the security deposit was sufficient to satisfy the Property Code's requirement of "writing[."]

6. The parties['] consistent use of email to communicate regarding the security deposit was sufficient to constitute a waiver of any complaint that such failed to satisfy the Property Code's requirement of "writing[."]

. . . .

8. [Landlord] did not act in bad faith as that term is defined by the Property Code with regard to [Tenant]'s security deposit.

9. [Landlord] did not act in bad faith by sending an itemized list of deductions from the security deposit to [Tenant] via email, instead of in a paper form via United States Postal Service, as the parties had consented to communicate by email and email is sufficient to constitute "written" as that term is used in the Texas Property Code.

### 3. Analysis

Tenant bases his challenge to the finding that Landlord did not act in bad faith solely on Landlord's decision to send the itemized-charges list via email instead of via the United States Postal Service. Tenant cites no case law for his premise but instead relies on Property Code Section 92.1041: "A landlord is presumed to have refunded a security deposit or made an accounting of security deposit deductions if, on or before the date required under this subchapter, the refund or accounting is placed in the United States mail and postmarked on or before the required date." *Id.* § 92.1041.[10] Tenant does not challenge any of the findings of fact or conclusions of law set forth above.

In the unchallenged findings, the trial court specifically found that the parties had agreed to use email. *See generally* Tex. Bus. & Com. Code § 322.007(c) (stating that under the Uniform Electronic Transactions Act, "[i]f a law requires a record to be in writing, an electronic record satisfies the law"); *id.* § 322.005(b) (stating that Texas Business and Commerce Code Chapter 322 applies only to transactions between parties who have agreed to conduct transactions by electronic means and that whether the parties have made such agreement is determined from the context and

---

[10]As noted in Tenant's brief, in 2025 the Texas Legislature added a new provision to the Property Code chapter governing security deposits, and that section specifically allows required notices and communications to be sent by email if the tenant and the landlord or landlord's agent have previously communicated by email. Tex. Prop. Code § 92.113(a). But as pointed out by Tenant, that provision was not in effect when the underlying lease was signed.

21

surrounding circumstances, including the parties' conduct). Here, the record includes an email from Tenant to Landlord providing his forwarding address for the security-deposit refund. Additionally, Tenant submitted maintenance requests via email. *See generally* Tex. Prop. Code § 92.056(b), (c) (mentioning giving notice of needed maintenance by postal mail). Tenant therefore believed that his giving notice via email satisfied his "written" communication requirements under the Property Code.[11] We conclude that there is some evidence to support the trial court's unchallenged findings that the parties had consented to the use of email to resolve the security-deposit-retention issue and that there was thus no bad faith on Landlord's part in using that medium of communication. *See Tenaska Energy*, 437 S.W.3d at 523. Moreover, Tenant did not establish that Landlord's use of email to communicate the security-deposit deductions failed to satisfy the statute's "written description" requirement, and therefore Tenant did not establish as a matter of law bad faith on the part of Landlord. In the absence of such evidence from Tenant, the bad-faith presumption was not triggered.

Accordingly, we hold that legally and factually sufficient evidence supports the trial court's finding of no bad faith on Landlord's part in using email to send the list

---

[11]To the extent that it was error for Landlord to use email, Tenant cannot show harm because Tenant admitted receiving the itemized-charges list and responding to it.

of itemized charges related to the security-deposit retention,[12] and we overrule Tenant's third issue.

## IV. Attorney's Fees and Costs[13]

In his first issue, Tenant argues that he was the prevailing or successful party in this case and that the trial court thus erred by finding (1) that he was not entitled to recover attorney's fees and court costs and (2) that Landlord was entitled to recover court costs. Because the evidence is sufficient to support an unchallenged finding and because the challenged conclusion of law is correct, we cannot say that the trial court erred in solely awarding costs to Landlord.

### A. Standard of Review and Applicable Law

The Dallas Court of Appeals has set forth the standard of review that we apply and the law applicable to determine prevailing-party status, including a prevailing-party example from the Texas Supreme Court:

> Whether a party is entitled to recover attorney's fees under a contract is a question of law [that] we review de novo. *Goldman v. Olmstead*, 414 S.W.3d 346, 365–66 (Tex. App.—Dallas 2013, pet. denied) (applying de novo standard of review to order awarding fees based on prevailing[-]party provision of contract[] (citing *Holland v. Wal-Mart Stores, Inc.*, 1 S.W.3d 91, 94 (Tex. 1999)[ (op. on reh'g)])[)][)]; *VSDH Vaquero Venture,*

---

[12]Tenant raises no other argument attempting to show that Landlord's conduct triggered the bad-faith presumption.

[13]Tenant filed a reply brief that expanded on his first issue, and Landlord filed a motion to strike or disregard improper new arguments in Tenant's reply brief. Because we do not discern any new arguments in Tenant's reply brief, we deny Landlord's motion to strike.

*Ltd. v. Gross*, No. 05-16-01041-CV, 2017 WL 3405312, at \*2 (Tex. App.—Dallas Aug. 9, 2017, no pet.) . . . .

. . . .

. . . When interpreting a contractual attorney's fee provision in which the "prevailing party" term is left undefined, as is the case here, we are to "presume the parties intended the term's ordinary meaning." *WWW.URBAN.INC. v. Drummond*, 508 S.W.3d 657, 666 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (quoting *Intercont'l Grp. P'ship v. KB Home Lone Star L.P.*, 295 S.W.3d 650, 653 (Tex. 2009)).

. . . .

To be a prevailing party, the party must "obtain actual and meaningful relief, something that materially alters the parties' legal relationship." *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 485–86 (Tex. 2019) (quoting *KB Home*, 295 S.W.3d at 659). "A defendant can obtain actual and meaningful relief, materially altering the parties' legal relationship, by successfully defending against a claim and securing a take-nothing judgment on the main issue or issues in the case." *Sunchase IV Homeowners Ass'n, Inc. v. Atkinson*, 643 S.W.3d 420, 424 (Tex. 2022) (quoting *Rohrmoos*, 578 S.W.3d at 486); *Blockbuster, Inc. v. C-Span Ent.*, 276 S.W.3d 482, 491 (Tex. App.—Dallas 2008, pet. granted, judgm't vacated w.r.m.) (a prevailing party is "the party who successfully prosecutes the action or defends against it on the main issue."). . . .

Successfully defending on the main action typically means "obtaining a take-nothing judgment on the main issue or issues in the case." *Bhatia v. Woodlands N. Hous*[.] *Heart Ctr., PLLC*, 396 S.W.3d 658, 670 (Tex. App.—Houston [14th Dist.] 2013, pet. denied). "A prevailing party is one who is vindicated by the trial court's judgment." *Robbins v. Capozzi*, 100 S.W.3d 18, 27 (Tex. App.—Tyler 2002, no pet.). For example, a defendant successfully defends against a claim that it breached a contract when the jury finds the defendant did not breach the contract or was excused for its breach. *E.g.*, *Rohrmoos*, 578 S.W.3d at 486 (counter[]defendant was prevailing party because jury found counter[]plaintiff breached first, and trial court rendered take[-]nothing judgment on counter[]plaintiff's counterclaim) . . . .

24

In *Rohrmoos*, UTSW sued Rohrmoos for breach of a commercial lease. 578 S.W.3d at 476. Rohrmoos asserted a counterclaim for breach of contract against UTSW. *Id.* The jury found Rohrmoos and UTSW each breached the lease, but Rohrmoos breached first. *Id.* The trial court entered a take[-]nothing judgment against Rohrmoos on its counterclaim. *Id.* at 476–77. In the supreme court, UTSW contended it was the prevailing party *as a defendant* because it successfully defended against Rohrmoos's counterclaim for breach of contract. *Id.* at 485. More specifically, UTSW "successfully defended" against the counterclaim by obtaining a jury finding that Rohrmoos breached first. *Id.* The Texas Supreme Court agreed and held UTSW was a prevailing party entitled to attorney's fees under the lease because UTSW "successfully defended against Rohrmoos's breach[-]of[-]contract counterclaim, and the trial court rendered a take-nothing judgment in UTSW's favor as a counter[]defendant." *Id.* at 486 . . . .

*Bigbee v. Samadian Fam. Ltd. P'ship*, No. 05-20-00656-CV, 2022 WL 4298725, at *2–4 (Tex. App.—Dallas Sept. 19, 2022, pet. denied).

Additionally, Texas Rule of Civil Procedure 131 provides that "[t]he successful party to a suit shall recover of his adversary all costs incurred therein, except where otherwise provided." Tex. R. Civ. P. 131; *see also Chilton Ins. Co. v. Pate & Pate Enters., Inc.*, 930 S.W.2d 877, 895 (Tex. App.—San Antonio 1996, writ denied) (op. on reh'g) ("In suits involving claims and counterclaims, the party receiving the larger award is entitled to final judgment and recovery of its costs."). But "[t]he court may, for good cause, to be stated on the record, adjudge the costs otherwise than as provided by law or these rules." Tex. R. Civ. P. 141. We review a trial court's allocation of costs under an abuse-of-discretion standard. *Swallow v. QI, LLC,* No. 14-10-00859-CV, 2012 WL 952246, at *6 (Tex. App.—Houston [14th Dist.] Mar. 20, 2012, pet. denied).

25

**B.      Relevant Findings of Fact and Conclusions of Law**

The following findings of fact are relevant to Tenant's first issue:

13.  [Tenant] failed to properly maintain the Premises and the damages to the Premises above normal wear and tear for which [Landlord] is entitled to recover are as follows:  locks ($156.87 plus $150 labor), garage door ($55), fire alarm and door stoppers ($139.70)[,] and one bedroom of carpet determined to be approximately 125 square feet ($568.11), for a total of $1[,]069.68.

14.  Additional alleged damage to the Premises appear[s] to be the result of normal wear and tear.

15.  [Landlord] is entitled to retain $1[,]069.68 of the $1[,]950.00 deposit.  [Tenant] is entitled to a return of $880.32 of the security deposit.

16.  As result of this action [Landlord] incurred reasonable and necessary attorney[']s fees.

17.  As a result of this action [Tenant] incurred reasonable and necessary attorney[']s fees.

18.  Smoke[-a]larm removal sufficient to support a violation of Texas Property Code § 92.2611 requires notice and [an] opportunity for the tenant to cure in order to incur the penalty.  That was not done in this case.  Thus, [Landlord] is only entitled to the cost of replacing the smoke detector, and the labor required to do so, awarded in the breach[-]of[-]contract claim.

. . . .

20.  Insufficient evidence was presented that [Landlord] acted in bad faith in determining the amount of security deposit to be withheld.

. . . .

22. Insufficient evidence was presented to find that [Landlord had] engaged in any retaliatory conduct.

26

23.	[Landlord] did not lock [Tenant] out of the Premises as [*Tenant*] *had first breached the contract* by changing the locks on the Premises without [Landlord]'s consent and did not provide a key to [Landlord]. [Emphasis added.]

The following conclusions of law are relevant to Tenant's first issue:

1.	[Tenant] breached the parties' Lease by damaging the property beyond normal wear and tear, by removing the smoke detector, by changing the lock on the front door[,] and by leaving the Premises in a state [in] which [it] appeared [that] he had surrendered or abandoned the Premises.  [Tenant]'s damage to the Premises amounted to $1,069.68.

2.	[Landlord] breached the parties' Lease by withholding the entire security deposit and [by] failing to return $880.32 of the security deposit.

3.	As a result of [Tenant]'s breach, [Landlord] is entitled to retain $1,069.68 of the security deposit.

4.	As a result of [Landlord]'s retention of an . . . excess of actual damages to the Premises, [Tenant] is awarded $880.32 of the security deposit.

	. . . .

12.	[Landlord] and [Tenant] both breached the Lease and thus neither is entitled to an award of reasonable attorney[']s fees.

13.	As [Landlord] prevailed on the majority of his claims and [Tenant] failed to prevail on the majority of his, *the* [*c*]*ourt finds good cause for* [*Landlord*] *to recover costs* under TRCP 141.  [Emphasis added.]

## C. Analysis

Here, just as in his second issue, Tenant fails to challenge Finding of Fact No. 23, finding that he breached first.[14] And because we have held that there is some evidence to support that unchallenged finding, the evidence is legally and factually sufficient to support the trial court's decision to not award Tenant attorney's fees.[15] *See Tenaska Energy*, 437 S.W.3d at 523; *see also Rohrmoos*, 578 S.W.3d at 486; *cf. Bigbee*, 2022 WL 4298725, at *5 (holding that when the jury found that both parties had breached and that the landlord did not obtain a finding on who had breached first, as in *Rohrmoos*, the landlord was not a prevailing party entitled to attorney's fees even though the jury vindicated landlord's withholding $1,055 of the security deposit as reasonable).

As to the award of costs, Tenant takes aim at the wording of Conclusion of Law No. 13, arguing that "the trial court did not say that it found good cause for shifting costs[] but rather that [Landlord] was the prevailing party." Conclusion of Law No. 13 possibly contains a typographical error in that it appears from the context at the beginning of the sentence that the trial court is naming Landlord as the successful party under TRCP 1<u>3</u>1, not TRCP 141. And the record backs up that

---

[14]In conjunction with his first issue, Tenant mentions only Finding of Fact No. 17 and Conclusion of Law No. 13.

[15]We need not analyze whether the trial court should have awarded Landlord attorney's fees because he did not file a notice of appeal challenging the trial court's judgment. *See* Tex. R. App. P. 25.1(c) (stating that a party who seeks to alter the trial court's judgment must file a notice of appeal); *see also* Tex. R. App. P. 47.1.

conclusion. As demonstrated in the summary chart that follows, Landlord was awarded a larger percentage of the security deposit than Tenant, and Landlord prevailed on the bulk of Tenant's counterclaims that were before the trial court:

| Claim or Counterclaim | Result | Prevailing or Successful Party |
|---|---|---|
| Landlord's breach-of-contract claim | Landlord allowed to retain $1,069.68 of $1,950.00 security deposit | Landlord received a larger percentage of the security deposit |
| Landlord's statutory smoke-detector-removal claim | Take-nothing judgment (replacement & labor costs included in breach-of-contract damages) | Tenant |
| Tenant's security-deposit-retention counterclaim | No evidence of bad faith on Landlord's part, but Tenant awarded $880.32 of the security deposit | Landlord received a larger percentage of the security deposit |
| Tenant's retaliation counterclaim | Take-nothing judgment | Landlord |
| Tenant's statutory-lockout counterclaim | Take-nothing judgment | Landlord |

Tenant relies on an El Paso case[16] for part of his successful-party argument, but that case is not binding on us and does not involve two breaching parties or a decision as to who breached first. We therefore conclude that it is inapplicable to the situation here.

The crux of Tenant's argument is that he was the only party who was awarded damages. Tenant, without citing any authority, argues that the portion of the security

---

[16]*Newton v. Calhoun*, 203 S.W.3d 382, 385 (Tex. App.—El Paso 2006, no pet.).

deposit that Landlord "was able to keep" does not constitute damages, that Landlord did not seek declaratory relief, and that Landlord "did not bring his breach[-]of[-] contract claim so that he could keep money he [had] already . . . retained from the deposit." *See* Tex. R. App. P. 38.1(i) (requiring an appellant's argument to contain citations to authorities). This argument ignores the case law cited above holding that a party who is awarded a take-nothing judgment can be a prevailing party and that a counterdefendant can be a prevailing party when the factfinder determines that the counterplaintiff breached first. *See Rohrmoos*, 578 S.W.3d at 486; *see also Pala v. Maxim*, No. 01-01-00618-CV, 2002 WL 188567, at \*7 (Tex. App.—Houston [1st Dist.] Feb. 7, 2002, no pet.) (holding that the parties' duties—landlord's duty to refund tenant's security deposit, subject to any prorated rent due, and tenant's duty to pay the last month's rent—constituted the necessary element of damages to tenant as well as landlord); *LaVoie v. Kaplan*, 556 S.W.2d 641, 644 (Tex. App.—Waco 1977, writ dism'd) (taxing costs against tenants who recovered $90 of their $100 deposit). Tenant's claim that Landlord did not obtain meaningful relief is belied by the fact that Landlord did not have to refund more than half of the security deposit and that Landlord was successful in obtaining take-nothing judgments on two of Tenant's counterclaims.

Moreover, the lease provided that the prevailing party could recover costs from the nonprevailing party. As shown in the chart, Landlord was the prevailing party and was therefore entitled to recover costs. *See generally Klekotka*, 2011 WL 550081, at \*3

30

(holding that record contained evidence supporting the trial court's award of court costs to landlords because lease provided for the landlords' recovery of all costs associated with eviction of tenant). We therefore conclude that despite a potential typographical error, the substance of Conclusion of Law No. 13 is correct.

Accordingly, we hold that the trial court did not err by not awarding Tenant attorney's fees or court costs and did not abuse its discretion by awarding Landlord court costs. We overrule Tenant's first issue.

## V. Conclusion

Having overruled Tenant's three issues, we affirm the trial court's judgment.

/s/ Dabney Bassel

Dabney Bassel
Justice

Delivered: June 18, 2026

31